Concord Family Division
No. 2009-231

IN THE MATTER OF DAWN M. O'NEIL AND EUGENE E. O'NEIL, JR.

Submitted: December 21, 2009
Opinion Issued: January 28, 2010

616

*Wiggin & Nourie, P.A.*, of Manchester (*Gail E. Bakis* on the brief), for the petitioner.

*Charles A. Russell*, of Concord, by brief, for the respondent.

BRODERICK, C.J. The respondent, Eugene E. O'Neil, Jr., challenges numerous rulings entered by the Concord Family Division in divorce proceedings with the petitioner, Dawn M. O'Neil, including: (1) restraining orders restricting his presence at the family court and at his workplace; (2) orders relating to the disposition of marital assets; (3) orders denying motions to disqualify a certain presiding judge; and (4) orders relating to alimony, wage assignment and the final divorce. We affirm.

I

The facts of this case are involved and relate to proceedings surrounding the parties' divorce. The petitioner commenced the divorce in the Merrimack County Superior Court in March 2007. In May, the trial court issued a final domestic violence protective order against the respondent. *See* RSA 173-B:5 (Supp. 2009). In August, the superior court transferred the case to the then newly created Concord Family Division.

A

While the divorce was pending in superior court, the respondent, who was *pro se* for much of this period, visited the courthouse on almost a daily basis. In August 2007, court staff and security officers reported that the respondent had engaged in conduct that court staff found unsettling. Specifically, it was reported that he had approached one court employee and asked why she had parked in a different location that day than she had in the past. On another occasion, he followed the same employee after she had entered the courthouse, asked her name, shook her hand, and stood so close as to cause her discomfort. When he left, he asked security officers the name "of the girl who works upstairs," and stated that he knew, by name,

another female employee "who sits at the front desk over there." Security officers then observed him walking around the outside of the court and a nearby building housing the offices of the Merrimack County Attorney.

Based upon these incidents, the Trial Court (*Lynn*, C.J.), on August 8, entered an order *sua sponte* restraining the respondent, pending a hearing, from entering the courthouse or its curtilage unless his presence was required for a hearing, or he had pleadings to file. The order limited the time frame he could be in the building when he had a hearing to attend. Specifically, the respondent was allowed to enter the courthouse no earlier than fifteen minutes prior to its scheduled time, and he was required to leave no later than fifteen minutes after the hearing concluded. The order also limited where he was allowed to be in the building when he had pleadings to file. He was allowed to proceed no further than the security desk at the entrance to the courthouse, and was required to deliver the pleadings to court security.

The superior court had not yet held a hearing relative to the *sua sponte* order when it transferred the case to the family division. On September 4, 2007, the Family Division (*Carbon*, J.) ruled that the restraining order issued by the superior court would remain in effect in the family division pending a hearing before it. The family division held a hearing relative to the restraining order in November 2007. At the hearing, the respondent acknowledged the incidents referenced by the superior court, but denied that his actions were inappropriate. He also described his familiarity with several members of the superior court's staff, and asserted that he could identify details about them such as the cars they drove, where they parked, their license plates, and that one person ordinarily carried two cups of coffee into the courthouse. The family division noted its concern with the respondent's conduct, including conduct observed and reported in the family division such as his direction of profanity toward opposing counsel, and his reluctance to apologize when admonished by the trial court to do so. It lifted the order on November 26, 2007, however, subject to future review.

## B

Meanwhile, the respondent continued to engage in conduct the trial court found troubling. In December 2007, the respondent allegedly contacted his insurance agent, requesting information regarding a car that the petitioner had apparently insured. When the agent refused to provide it, the respondent reportedly threatened to harm himself and others. According to the agent, the respondent stated "something to the effect that 'they' ha[d] taken away everything and [he was] going to go out the window," that he would not be "going out alone," that the domestic violence protective order was merely "a piece of paper," and that no one could keep him away from

the marital home. The respondent also allegedly asked the agent how he "would feel if someone ended up hurt or dead." Based upon similar threats the respondent allegedly made to a police officer familiar with the case, the officer had the respondent involuntarily admitted to the New Hampshire Hospital on an emergency basis. *See* RSA 135-C:27 (2005).

Subsequently, the insurance agent communicated the alleged threats to the petitioner's counsel who, apparently believing that the scope of the threats might include court officials and staff, notified the Administrative Office of the Courts. That office, in turn, notified the family division, which on December 10, 2007, issued the following order *sua sponte*:

> The Court has been informed that the Respondent . . . made statements at the office of his insurance agent which could reasonably be construed to be threatening to any person involved with his cases in the New Hampshire Judicial System. Further, Mr. O'Neil has been involuntarily committed at the New Hampshire State Hospital on the basis that he is a potential threat to himself and others. This follows a pattern of rude and aggressive behavior while in the Concord District Courthouse.
>
> Accordingly, pending a hearing on this matter, Mr. O'Neil shall be prohibited from entering the Concord District Court/Family Division building and property unless he is present for a hearing on one of the matters in which he is a litigant, or unless he is required to file a pleading, in which case he may enter the courthouse lobby and file the document with the security officers at the desk.

Thereafter, the respondent, who by then was represented by counsel, moved to disqualify the presiding judge upon the basis that she had issued both the September 4 and the December 10 restraining orders without a sworn petition. He also asserted that there was no statutory basis for the orders under RSA chapter 173-B or chapter 458. The trial court denied the motion to disqualify, reasoning:

> As to the broader issue of whether the Court has authority to issue orders such as that issued on December 10, 2007, the Court has inherent authority to ensure that all members of the public feel safe and secure when entering and conducting business on courthouse premises. Furthermore, it is the duty of a trial judge to ensure safety and security for all persons, including its staff. When statements are made inferring threats of harm, when persons are involuntarily admitted to the state hospital based upon risk of harm to self and/or others, and when additional

security has been required at the courthouse because of an individual's belligerent conduct, the Court is within its inherent authority to ensure the safety and protection of all persons using its public building. Taking such action to protect the safety and security of the public is not the basis for recusal in a particular case.

## C

Further issues arose in the divorce related to two substantial marital assets, Deployment Technologies, Inc. (DTI), a company the respondent solely owned and was employed by, and the marital home. Early in the proceedings, the superior court granted the petitioner's motion to appoint a receiver to manage DTI.

After the divorce was transferred to the family division, the receiver recommended that DTI be sold and operated by the receiver until a sale occurred. The family division adopted the recommendation. The respondent, however, filed a petition for bankruptcy, and, ultimately, the bankruptcy trustee sold DTI pursuant to a bankruptcy court order.

Prior to the sale, the receiver moved for a restraining order, asserting that, after filing bankruptcy, the respondent: (1) had been entering DTI's premises, telling its employees that the receiver was no longer in control, and otherwise harassing its employees; (2) had ordered DTI's payroll administrator to cancel payroll for all employees; (3) had entered DTI's bank and unlawfully withdrawn money from the account of a subsidiary of DTI; and (4) had been harassing the receiver. After a hearing, the family division entered an order prohibiting the respondent from, *inter alia*, entering the premises of DTI or contacting its management, employees, bank, or payroll service, and contacting the receiver, entering the receiver's property, or coming within a quarter mile of the receiver's home.

With respect to the marital residence, the temporary support order obligated the respondent to pay the mortgage on the property. After the respondent had consistently failed to pay the mortgage, the family division awarded the petitioner temporary alimony of $3,500 per month to be paid through wage assignment, and requested that the receiver implement the assignment.

The amount of the wage assignment, however, exceeded the amount that could be garnished under state and federal law. *See* RSA 458-B:4, IV (Supp. 2009); 15 U.S.C. § 1673(b) (2006). In January 2008, the payroll administrator for DTI began to garnish only the amount it could lawfully garnish.

As of January 8, 2008, there was an arrearage of approximately $16,000 on the mortgage. In February 2008, the respondent entered into a

stipulation in the bankruptcy court with the holder of the mortgage and the petitioner, agreeing to "immediately sign[] and return[] to [DTI] all documents required to continue the issuance of his paycheck and the current wage assignments."

In March 2008, the family division found the respondent in contempt of his alimony obligation, restrained him "from cashing, depositing or otherwise liquidating his paychecks from DTI," and appointed the petitioner's counsel a commissioner with power to endorse the paychecks and allocate the payments in accordance with the support orders. The respondent then moved to modify his alimony obligation and strike the wage assignment, raising for the first time the limits on garnishment under RSA 458-B:4 and 15 U.S.C. § 1673. He also moved to reconsider the court's appointment of a commissioner, arguing that the family division lacked jurisdiction to appoint a commissioner, that the petitioner's counsel was disqualified from serving in that capacity, and that the appointment violated RSA 458-B:4 and 15 U.S.C. § 1673(b). The family division modified the wage assignment to garnish the respondent's wages "to the maximum amount allowable by law," but otherwise denied the motions.

While the record reflects that counsel for the petitioner endorsed three paychecks from DTI pursuant to the commission, the respondent's interest in DTI was, ultimately, sold, and his employment with DTI terminated on March 31, 2008. The holder of a second mortgage later acquired the marital home through foreclosure.

D

Throughout the proceedings, the respondent filed at least three motions to disqualify the presiding family division judge or otherwise reassign the case, in addition to the motion to disqualify based on the September 4 and December 10, 2007 restraining orders. The family division denied the motions, but assigned a marital master to preside over the final hearing on the merits of the divorce.

After a final hearing, consisting of five days of testimony, the Family Division (*Gordon*, J.) adopted the recommendations of the Marital Master (*Foley*, M.) to grant a divorce on the fault grounds of extreme cruelty and treatment as seriously to injure health or endanger reason. *See* RSA 458:7, III, V (2004). As part of the final decree, the trial court awarded the petitioner alimony of $2,300 per month for a period of five years. This appeal ensued.

II

On appeal, the respondent argues that: (1) the family division lacked jurisdiction to issue the restraining orders, to appoint a commissioner, and

to approve the sale of DTI; (2) the wage assignment order and the order appointing a commissioner violated federal and state limitations on wage assignment; (3) the evidence failed to support the family division's findings of fault under RSA 458:7 or awards of temporary and permanent alimony; and (4) the family division erred in denying his disqualification motions. We address each argument in turn.

## III

We address first the respondent's challenges to the family division's jurisdiction. The family division is a court of limited jurisdiction, with exclusive power conferred by statute to decide cases in certain discrete areas, including "[p]etitions for divorce." RSA 490-D:2, I (Supp. 2009). As to cases falling within its grant of subject matter jurisdiction, the family division "shall have the powers of a court of equity." RSA 490-D:3 (Supp. 2009). Inherent in the family division's grant of jurisdiction is the necessary power to control the proceedings before it. *See State v. LaFrance*, 124 N.H. 171, 179-80 (1983); *cf. Emerson v. Town of Stratford*, 139 N.H. 629, 631 (1995) (district courts have inherent power to impose sanctions). The ultimate determination as to whether the trial court has jurisdiction in this case is a question of law subject to *de novo* review. *See Skwira v. United States*, 344 F.3d 64, 72 (1st Cir. 2003), *cert. denied*, 542 U.S. 903 (2004); *cf. Robinson v. N.H. Real Estate Comm'n*, 157 N.H. 729, 731 (2008) (jurisdictional challenge turning on statutory interpretation was question of law subject to *de novo* review).

## A

The respondent first contends that the family division lacked jurisdiction to issue the September 4 and December 10, 2007 restraining orders. We agree with the family division that it had inherent power to issue restraining orders to safeguard the security of its judicial and administrative staff, and of members of the public who use its facilities.

"The power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice." *Emerson*, 139 N.H. at 631. (quotation omitted). "An integral part of any court's duty to administer justice and fairly adjudicate disputes is to ensure that all parties have the opportunity to advance their cause in an atmosphere of safety, decorum, and fairness." *Petition of Mone*, 143 N.H. 128, 135 (1998).

We conclude that the trial court's inherent power to secure the safety of its facilities and its staff necessarily includes the power to place

reasonable limits upon a party's access to the court where the trial court determines that such limitations are reasonably necessary to ensure the security of the court. *Cf. Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (federal district courts "have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions"); *LaFrance*, 124 N.H. at 182 (trial judges have inherent authority to limit the wearing of firearms in the courtroom).

Because the trial court issued the September 4 and December 10, 2007 restraining orders pursuant to its inherent power, we reject the respondent's argument that the trial court erred in failing to comply with the requirements for restraining orders issued under RSA 458:16 (2004). To the extent he argues that the trial court deprived him of due process in issuing the orders, he did not sufficiently develop the argument to warrant appellate review. *See State v. Blackmer*, 149 N.H. 47, 49 (2003).

B

The respondent next argues that the family division lacked jurisdiction to issue the December 18, 2007 restraining order limiting his contact with DTI, its management and employees, its bank, and the receiver. The respondent argues that restraining orders of this sort are "strictly equitable in nature," and may only be issued under a court's equity powers or pursuant to RSA 458:16 or RSA chapter 173-B. Because the persons entitled to protection under those statutes do not include the persons and entities protected by the December 18 order, and because the family division lacks general equity jurisdiction, he contends that it lacked jurisdiction to issue the order.

Even assuming that the family division lacked specific statutory authority for the restraining order, we conclude that it had jurisdiction to issue the order pursuant to RSA 490-D:3. Although the respondent is correct that the family division lacks a general grant of equitable powers, it has "the powers of a court of equity in cases where subject matter jurisdiction lies with the judicial branch family division." RSA 490-D:3. The powers of a court of equity include the power to restrain unwanted contact in the absence of an adequate remedy at law. *See State v. Simone*, 151 N.H. 328, 331 (2004).

In this case, the receivership was established by the superior court as part of the divorce to manage and determine the viability of businesses owned or controlled by the respondent that were subject to distribution under RSA 458:16-a (2004). *See Bursey v. Town of Hudson*, 143 N.H. 42, 45 (1998). Accordingly, the receivership was ancillary to the divorce, and we

reject the respondent's contention that, merely because the power to appoint a receiver is equitable, *see Eastman v. Bank*, 58 N.H. 421, 422 (1878), jurisdiction over the receivership remained in superior court after the transfer to the family division. Pursuant to its equity powers under RSA 490-D:3, the family division's jurisdiction over the divorce necessarily included the ancillary order of receivership issued by the superior court, even without a specific grant of jurisdiction over receiverships under RSA 490-D:2.

In moving for the restraining order, the receiver claimed the respondent was interfering with the receivership. Because the family division had jurisdiction over the receivership, and because the powers of a court of equity include the power to issue a restraining order, the family division had the power to grant the motion.

■ For the same reason that the family division had jurisdiction over the receivership, we conclude that it had jurisdiction to appoint a commissioner. Regardless of whether the appointment of a commissioner is an equitable power, the commission here was created to enforce support orders issued in the divorce. Accordingly, the appointment was necessarily within the family division's subject matter jurisdiction over the divorce pursuant to RSA 490-D:3.

## C

■ The respondent also challenges the jurisdiction of the family division to order the sale of DTI. We conclude that the issue is moot. Likewise, we conclude that the respondent's challenges to the merits of that order, and of the orders garnishing his wages from DTI and appointing a commissioner, are moot. "Generally a matter is moot when it no longer presents a justiciable controversy because issues involved have become academic or dead." *N.H. Assoc. of Counties v. State of N.H.*, 158 N.H. 284, 292 (2009).

■ DTI was, ultimately, sold by the trustee in the respondent's bankruptcy pursuant to an order of the bankruptcy court. Thus, regardless of whether the family division had jurisdiction to order the sale, or otherwise erred by ordering the sale, those issues have become academic.

With respect to the respondent's argument that the garnishment of his wages from DTI violated federal and state limitations on wage assignment under RSA 458-B:4 and 15 U.S.C. § 1673(b), the record reflects that, when he brought the issue to the attention of the family division, it modified the order to grant him the relief he sought. To the extent he further argues that the appointment of a commissioner to allocate his DTI wages violated RSA 458-B:4 and 15 U.S.C. § 1673, and that the petitioner's counsel was

disqualified from serving in that role, we conclude that the commission effectively ended upon the sale of, and the termination of his employment with, DTI.

The respondent cites no authority for his contention that, merely because the wage assignment order and the commissioner appointment may have violated RSA 458-B:4 and 15 U.S.C. § 1673, he is entitled to a credit for amounts that were unlawfully garnished. Indeed, we have noted that while 15 U.S.C. § 1673, as adopted by RSA 458-B:4, limits the use of wage garnishment as an enforcement mechanism for support orders, it in no way restricts a court-ordered support obligation. *See Center for Gastrointestinal Medicine v. Willitts*, 137 N.H. 67, 69-70 (1993). Moreover, federal courts have construed 15 U.S.C. § 1673 so as not to provide a private right of action, *see, e.g., Colbert v. Roling*, 233 Fed. Appx. 587, 590 (8th Cir. 2007); *Burris v. Mahaney*, 716 F. Supp. 1051, 1058 (M.D. Tenn. 1989), or to apply to voluntary wage assignments, *see, e.g., Western v. Hodgson*, 494 F.2d 379, 382-83 (4th Cir. 1974); *Bache Halsey Stuart Shields Inc. v. Killop*, 589 F. Supp. 390, 394-95 (E.D. Mich. 1984). The record in this case establishes that, as of February 25, 2008, the respondent voluntarily agreed to "immediately sign[] and return[] to [DTI] all documents required to continue the . . . current wage assignments."

Because the trial court modified the wage assignment to conform with RSA 458-B:4 and 15 U.S.C. § 1673, the commission has since terminated, and the respondent has failed to establish that he is entitled to a credit for unlawfully garnished wages, we conclude that his arguments challenging the wage assignment and appointment of a commissioner are moot. We express no opinion as to whether, in an appropriate case, a party whose wages have been unlawfully garnished might have an equitable remedy against the creditor.

## IV

The respondent next argues that the family division lacked support for its findings of fact relative to fault, *see* RSA 458:7, and its awards of temporary and permanent alimony, *see* RSA 458:19 (Supp. 2009). Specifically, the respondent contends that the petitioner failed to submit expert evidence establishing that he seriously injured her health or endangered her reason, *see* RSA 458:7, V, and that she failed to demonstrate her need for alimony or his ability to pay the awards, *see* RSA 458:19, I. The respondent has failed, however, to supply transcripts of either the final hearing or the hearings relative to temporary alimony. *See* SUP. CT. R. 13(2) (moving party responsible to ensure all portions of record necessary to decide issues are provided on appeal), 15(3) (moving party challenging

evidentiary support for a ruling required to provide transcript of all evidence relevant to such ruling). Accordingly, we must assume that the record supports the family division's factual findings. *See Bean v. Red Oak Prop. Mgmt.,* 151 N.H. 248, 250 (2004).

Nothing in either the family division's final decree or temporary orders is legally inconsistent with its findings of fault or awards of alimony. Nor can we say, absent a transcript, that the petitioner was compelled to prove fault through expert testimony. *See In the Matter of Gronvaldt & Gronvaldt,* 150 N.H. 551, 554 (2004).

## V

 Finally, the respondent argues that the presiding family division judge was biased and should have granted his motions to disqualify. Specifically, he contends that the circumstances surrounding the issuance of the restraining orders, the alimony and wage assignment orders, and the order appointing a commissioner were such that a disinterested person would have believed that the presiding judge was biased. Merely because the family division issued orders restraining his access to the court and contact with third parties, and otherwise issued rulings that were adverse, does not establish that the judicial officer lacked impartiality. *See State v. Bader,* 148 N.H. 265, 271 (2002), *cert. denied,* 538 U.S. 1014 (2003). Upon this record, we cannot conclude that a reasonable person would have questioned the impartiality of the trial court. *See id.* at 268 (whether appearance of impropriety exists turns upon whether a reasonable person, not the judge, would question his or her impartiality).

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.