Conway Family Division
No. 2011-338

IN THE MATTER OF TAMI MALLETT AND MICHAEL MALLETT

Argued: November 10, 2011
Opinion Issued: January 13, 2012

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Daniel J. Harkinson*, of Rochester, by brief and orally, for the respondent.

DUGGAN, J. This is an interlocutory appeal from two orders of the Conway Family Division (*Albee*, J.) granting petitioner Tami Mallett's motions to amend and for attorney's fees. We reverse and remand for further proceedings consistent with this opinion.

We accept the facts as presented in the interlocutory transfer statement and the trial court's orders. *Goodrich v. Goodrich*, 158 N.H. 130, 133 (2008). The petitioner (the mother) and the respondent, Michael Mallett (the father), were involved in a long-term relationship, but never married. During the nearly fourteen years they were together, they had two children and held themselves out as a married couple. They wore wedding rings, implied that they had participated in a wedding ceremony, shared the same last name, owned property together, and worked jointly in business enterprises.

On March 2, 2009, the mother filed a petition for divorce. In response, the father filed a motion to dismiss, based upon the fact that he and the mother never married. The trial court granted the father's motion in part, but ruled that it would nonetheless "address all issues of parenting and child support raised" in the petition for divorce. The court also ruled that it had "equitable authority to make certain adjustments of the rights and interests of the parties," and granted the mother leave to amend her petition, or to file parenting and equity petitions to more fully develop her theories related to, among other things, the division of the parties' personal and real property.

The mother then filed a motion to amend, and later a motion for attorney's fees. In two separate orders, the court granted both motions. The father moved for reconsideration of the orders, or in the alternative, for an interlocutory transfer. The trial court granted the request for an interlocutory transfer, and transferred the following six questions to this court:

(1) Does the family division have jurisdiction under N.H. RSA 490-D:3, or otherwise, to adjudicate legal or equitable claims with respect to assets of parties who have children together but who never married?

(2) Does the family division have jurisdiction under N.H. RSA 490-D:3, or otherwise, to adjudicate a claim for compensation for services between unmarried parents of children?

(3) Does the family division have jurisdiction under N.H. RSA 490-D:3, or otherwise, to order one parent of a child to provide health insurance to the other parent, when the parties never married?

    (4)   Does the family division have jurisdiction under N.H. RSA 490-D:3, or otherwise, to partition real estate jointly owned by unmarried parents of children?

    (5)   Does the family division have jurisdiction to order that one parent in a parenting petition case pay any part of the legal fees of the other parent, in the absence of a finding of conduct that is in bad faith, vexatious, wanton, or oppressive?

    (6)   Does the family division have jurisdiction to find a marriage by estoppel and to grant a petition for divorce based on such a finding?

## I

We first address whether the family division may find a marriage by estoppel between the parties and grant a divorce based upon that finding. In New Hampshire, marriage is controlled by statute. To constitute a valid, legal marriage, the union of two people must comply with the requirements of RSA chapter 457 (2004 & Supp. 2011). Common law marriage is not recognized, except to the limited extent provided in RSA 457:39 (2004). *Joan S. v. John S.*, 121 N.H. 96, 98-99 (1981). Under RSA 457:39, when two persons cohabit and acknowledge each other as husband and wife, and are generally reputed as such, for at least three years and until the death of one of them, the survivor may be treated as the spouse of the deceased. Here, the mother recognizes that her relationship with the father does not meet these requirements, and does not argue that a common law marriage exists for any other reason. Instead, relying upon the principles of estoppel, she argues that the parties' committed relationship should be treated as a marriage for the purposes of these proceedings.

The application of equitable estoppel requires: (1) a knowingly false representation or concealment of material facts; (2) a recipient who was ignorant of the truth and who was intentionally, or through culpable neglect, induced to rely upon the false representation or concealment; and (3) a resultant injury. *Cadle Co. v. Bourgeois*, 149 N.H. 410, 418 (2003). In the context of marriage, estoppel does not create a valid marriage; rather, in limited circumstances, it may prevent a party from claiming the defense of invalidity. *Jessie v. Jessie*, 920 S.W.2d 874, 877 (Ark. Ct. App. 1996); *Suneson v. Suneson*, 508 N.E.2d 891, 891 n.2 (Mass. App. Ct. 1987).

Other jurisdictions have recognized marriage by estoppel. Some states apply the doctrine to prevent one party from claiming invalidity where there was no valid marriage, but one or both of the parties believed there

was, and the two lived together as husband and wife. *See, e.g., Martin v. Coleman*, 19 S.W.3d 757, 760 (Tenn. 2000); *Yun v. Yun*, 908 S.W.2d 787, 790-91 (Mo. Ct. App. 1995); *Brown v. Imboden*, 771 S.W.2d 312, 313 (Ark. Ct. App. 1989). The doctrine generally "does not apply in cases where the parties knowingly live[d] together in an unmarried state and [were] privileged to discontinue that relationship at will." *Coleman*, 19 S.W.3d at 760. Some states also apply the doctrine to prohibit the defense of invalidity against a third party where one party to a relationship knowingly misrepresented to the third party that the relationship was a marriage. *See, e.g., Taylor v. Taylor*, 362 S.E.2d 542, 547 (N.C. 1987).

■ We need not decide whether we would, under any circumstances, adopt the doctrine of marriage by estoppel because the doctrine would have no effect on our decision in this case. For estoppel to apply, the party asserting it must be ignorant of the truth. *Bourgeois*, 149 N.H. at 418. Here, the mother never believed she and the father were married. Further, the mother knowingly lived with the father in an unmarried state. *See Coleman*, 19 S.W.3d at 760. Accordingly, we hold that in this case, the family division does not have the authority to recognize a marriage by estoppel, and thus cannot grant a divorce.

## II

We next address questions one through four, *i.e.*, whether, in a dispute between unmarried parties who have children together, the family division has jurisdiction to partition jointly owned real estate, order one parent to provide health insurance coverage to the other parent, or adjudicate legal or equitable claims to assets and claims for compensation for services rendered.

■ Whether the family division has subject matter jurisdiction is a question of law subject to *de novo* review. *In the Matter of O'Neil & O'Neil*, 159 N.H. 615, 622 (2010). The family division is a court of limited subject matter jurisdiction. *See id.* Its powers are limited to those conferred by statute. *See id.*; RSA 490-D:2 (2010). RSA 490-D:2 grants the family division jurisdiction over "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity" and "[a]ctions for support or custody for children of unwed parties." RSA 490-D:2, I, II. It also grants jurisdiction over other specific matters, such as delinquency and abuse and neglect, and children in need of services. RSA 490-D:2, III-V.

RSA 490-D:2 does not give the family division jurisdiction over the division of assets, or over any other claims for compensation between unmarried parties. However, in addition to the jurisdiction granted by RSA

490-D:2, the family division has "the powers of a court of equity in cases where subject matter jurisdiction lies with [the family division]." RSA 490-D:3 (2010). The mother argues that because, in this case, RSA 490-D:2 grants the family division express statutory jurisdiction over the child support and custody issues, pursuant to RSA 490-D:3, the court has "ancillary" jurisdiction over all claims raised in her amended petition, including the power to partition the parties' real estate, divide assets and order the father to pay her health insurance. The father argues that RSA 490-D:3 does not grant any such jurisdiction, but merely provides the family division with the equitable powers needed to enforce orders in cases properly before it.

Resolution of this issue requires us to engage in statutory interpretation. We interpret statutes in the context of the overall statutory scheme, not in isolation. *Appeal of Union Tel. Co.*, 160 N.H. 309, 317 (2010). We first look to the language of the statute, *Kenison v. Dubois*, 152 N.H. 448, 451 (2005), and construe it "according to the common and approved usage of the language unless from the statute it appears that a different meaning was intended," *N.H. Resident Ltd. Partners of Lyme Timber v. N.H. Dep't of Revenue Admin.*, 162 N.H. 98, 101 (2011) (quotation omitted). We will not consider "what the legislature might have said nor add language that the legislature did not see fit to include." *State v. Lamy*, 158 N.H. 511, 515 (2009).

In granting the mother's motion to amend, the trial court first noted that New Hampshire case law permits unmarried parties to seek a judicial determination of their equitable rights, and permits recovery based upon express contract theories and quantum meruit. The trial court then explained that the statutory scheme includes unmarried parties with children within its jurisdiction for child-related matters, and that the legislature established the family division with a goal of assuring "the assignment of all family matters of a single family to one family division justice." It commented on the "dramatic" growth of unwed families and "[found] it incongruous that the legislative initiative to resolve all family related issues in a single court before a single decision maker could be construed in such a way as to leave a large number of 'families' to seek relief in alternate forums." The court explained, "For instance, unwed parents, once parenting rights and responsibilities are decided in the Family Division, would have to file a separate action in the Superior or Probate courts to have disputes as to interests in their furniture, vehicles, joint holdings, and property decided." The court ultimately determined it had jurisdiction pursuant to RSA 490-D:3, and granted the mother leave to amend her filing to properly invoke such equity jurisdiction.

■ In its order, the trial court failed to accord proper weight to the plain language of RSA 490-D:3 and the overall scheme of the relevant statutes. Although the family division's jurisdiction is expressly defined by RSA chapter 490-D, RSA chapter 458 (2004 & Supp. 2011) governs, among other things, the division of property and orders of alimony. RSA 458:16-a (2004) permits the equitable division of property only "[w]hen a dissolution of a marriage is decreed." Similarly, RSA 458:18-a (Supp. 2011) permits an order requiring one party to pay the other's health insurance "upon a decree of . . . divorce." RSA 458:19 (Supp. 2011) limits orders for the payment of alimony to cases where there has been a divorce decree. Further, no other chapter or provision in our Domestic Relations Law permits a court to order these remedies in non-divorce cases.

While unmarried parties are expressly within the family division's jurisdiction for purposes of child-related matters, this statutory scheme plainly restricts all divorce remedies and property distribution to married couples. Should the legislature determine that "unwed families" should have the opportunity to have all their claims, including contract claims, heard in the family division, it has the power to grant that jurisdiction to the family division. However, allowing unmarried parties to adjudicate their claims to assets, real property, and other "divorce-like" remedies in the family division, merely because the legislature granted the family division the "powers of equity" in determining matters properly before it, would encroach upon the province of the legislature and is contrary to the statutory scheme.

■ The mother, relying upon our decisions in *O'Neil* and *Joan S.*, asks us to interpret RSA 490-D:3 to grant the family division jurisdiction over all equitable claims between unmarried parties merely because the family division has subject matter jurisdiction over claims relating to their children. In *Joan S.*, we discussed the availability of equitable remedies to unmarried parties. *Joan S.*, 121 N.H. at 99. The parties in *Joan S.* never married, but the petitioner contended that the relationship should nonetheless be treated as a marriage. *Id.* at 97-98. She sought alimony, child support, and property division in accordance with the statute governing divorce. *Id.* We explained that New Hampshire does not recognize common law marriages except to the limited extent provided by RSA 457:39, and declined to apply a "divorce-like property settlement" to unmarried parties. *Id.* at 98-99. We noted, however, that where such theories are properly raised, unmarried couples living together may be able to obtain equitable adjustment of their rights, and may even recover under a contract theory. *Id.* at 99. We did not, however, indicate which court would have jurisdiction over such matters. *Id.*

In *O'Neil*, we addressed the equitable powers of the family division where the parties were married and sought a divorce. *O'Neil*, 159 N.H. at 617-18, 623-24. Throughout the divorce proceedings, the husband conducted himself in a way that required court intervention. *Id.* at 617-19. He approached and interacted with court employees in ways that made them uncomfortable, and threatened to harm himself and others more than once. *Id.* The family division was notified of his behavior, and because the threats "could reasonably be construed to be threatening to any person involved with his cases in the New Hampshire Judicial System," issued an order prohibiting him from entering the court, except to attend hearings in which he was a litigant or to file necessary papers. *Id.* at 619.

Subsequently, the family division appointed a receiver to manage a company owned by the husband. *Id.* at 620. The receiver later moved for a restraining order against the husband because he had been, among other things, entering the company's premises, harassing the receiver and harassing employees. *Id.* The family division entered an order prohibiting the husband from entering the company's premises or contacting management, employees, or the receiver. *Id.*

The husband appealed, arguing that the family division lacked jurisdiction to issue the restraining orders. *Id.* at 621. We first determined that the family division had authority to issue orders reasonably limiting the husband's access to the court because it has "inherent power to issue restraining orders to safeguard the security of its judicial and administrative staff, and of members of the public who use its facilities." *Id.* at 622-23.

██ The husband also argued that the family division did not have jurisdiction to issue the restraining order limiting his contact with both the company and the receiver because such an order is strictly equitable. *Id.* at 623. We explained that although the family division lacks a general grant of equitable powers, under RSA 490-D:3 it has jurisdiction to issue equitable orders in cases where the family division has subject matter jurisdiction. *Id.* We held that, because the receivership was established "as part of the divorce to manage and determine the viability of [the company] owned or controlled by the [husband] . . . subject to distribution," the family division had jurisdiction to issue the restraining order pursuant to RSA 490-D:3. *See id.* at 623-24.

██ Here, the mother argues that because in *Joan S.* we noted that unmarried couples may bring equity actions to determine their property rights, and in *O'Neil* we upheld the family division's exercise of equitable powers under RSA 490-D:3, the family division has jurisdiction over all her non-child related claims in this case. Her argument misconstrues our holdings. Although we acknowledged in *Joan S.* that an unmarried party

might be able to pursue equitable claims to obtain property distribution and asset division, she may only pursue them in the proper court. And, although we acknowledged the family division's equitable powers in *O'Neil*, those powers may only be exercised pursuant to the family division's proper subject matter jurisdiction.

In *O'Neil*, consistent with the statutory language, we upheld the family division's use of equity powers to assist in resolution of matters properly within the court's subject matter jurisdiction. Here, in contrast, the mother asks us to allow the family division to decide matters that are unrelated to the matter properly before it — child custody and support. Unlike in *O'Neil*, deciding these unrelated claims would not facilitate the court's decision on the child custody and support issues.

■ The plain language of RSA 490-D:3 permits only the exercise of equity powers. It does not grant the family division general equity jurisdiction. The interpretation proposed by the mother is not supported by the statutory language, *see Kenison*, 152 N.H. at 451, and is inconsistent with our construction of the overall statutory scheme above. *See Appeal of Union Tel. Co.*, 160 N.H. at 317. We thus decline to extend *O'Neil* by interpreting the statute to grant the family division jurisdiction over the mother's other claims. Accordingly, we reverse the trial court's order granting the mother leave to amend her filings to allow her to file equitable claims to real estate, assets, health insurance and compensation for services, and answer questions one through four in the negative.

## III

Finally, we address whether the Family Division has jurisdiction in an action based upon a parenting petition between unmarried parties to order one party to pay any part of the legal fees of the other party, absent bad faith or conduct that is vexatious, wanton or oppressive.

■ The general rule in New Hampshire is that each party to litigation must pay her own attorney's fees. *See Bedard v. Town of Alexandria*, 159 N.H. 740, 744 (2010). However, we have recognized exceptions to this rule. *Id.* Where a statute specifically authorizes it, a court may award attorney's fees. *Id.* Otherwise, an award of attorney's fees must be grounded upon an agreement between the parties or a judicially-created exception to the general rule. *See id.*; *In the Matter of Hampers & Hampers*, 154 N.H. 275, 289 (2006) (quotation omitted).

■ In *Harkeem v. Adams*, 117 N.H. 687, 690-91 (1977), we recognized that the trial court may award attorney's fees based upon the conduct of one of the parties. Under the *Harkeem* exception, an award of attorney's fees to one party is permissible where the other party has "acted in bad

faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action." *Harkeem*, 117 N.H. at 691 (quotation and citations omitted); *accord Bedard*, 159 N.H. at 744.

In the trial court's order dated January 23, 2011, it found that "[t]here is no question . . . that the [father] has the ability to pay both his own as well as the [mother's] legal costs and expenses." It also determined that the mother would "be at a substantial disadvantage if she is unable to have equally as competent counsel as the [father]." The court then ordered the father to pay the mother's legal fees and costs each month after December 1, 2010.

█ The mother argues that the trial court applied the *Harkeem* exception, awarding fees based in part upon the "vexatious nature" of the litigation, merely because the order noted that the issues have required "substantial court time as well as attorney time" and expert testimony. However, lengthy litigation is not necessarily vexatious in nature. *See* BLACK'S LAW DICTIONARY 1701 (9th ed. 2009) (defining "vexatious" as "without reasonable or probable cause or excuse; harassing; annoying"); *cf. Keenan v. Fearon*, 130 N.H. 494, 502 (1988) (explaining that "we have recognized a . . . court's power to award [attorney's] fees in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be").

█ Further, the trial court made no mention of the father's conduct, and specifically transferred the question of whether attorney's fees could be awarded absent bad faith or conduct that is vexatious, wanton or oppressive. We find that the trial court did not apply the *Harkeem* exception in awarding attorney's fees. *See Pugliese v. Town of Northwood*, 119 N.H. 743, 752 (1979) ("[B]efore a *Harkeem* exception to the general rule may be carved out, it must be supported by a specific finding of bad faith, such as obstinate, unjust, vexatious, wanton or oppressive conduct.").

█ In addition to the *Harkeem* exception, we have also recognized an exception permitting an award of attorney's fees in divorce cases. *See, e.g., DePalantino v. DePalantino*, 139 N.H. 522, 526 (1995); *Indorf v. Indorf*, 132 N.H. 45, 47 (1989); *Salito v. Salito*, 107 N.H. 77, 77-78 (1966). In awarding attorney's fees pursuant to this exception, trial courts must use "reasonable restraint" and the award must be based upon a finding of "need on the part of one party and ability to pay on the part of the other." *Indorf*, 132 N.H. at 47 (quotations and brackets omitted).

The father argues that the divorce exception only permits the trial court to award attorney's fees when the parties are, or previously have been, married, but does not apply when two parties have never been married. The mother argues that the trial court's award of attorney's fees was warranted under this exception because we have previously upheld the award of attorney's fees in situations where the parties were no longer married. Specifically, she argues that our decision in *Hampers*, 154 N.H. at 289-92, requires us to uphold the award.

In *Hampers*, we upheld an award of attorney's fees pursuant to the divorce exception. *Id.* at 290-92. The parties in *Hampers* were married for almost four years and had a child together. *Id.* at 277. The husband and wife cross-filed petitions for divorce and the court granted the wife's petition. *Id.* at 277-78. The court entered a final divorce decree dividing the assets. *Id.* at 278. The decree also ordered the husband to pay all of the wife's attorney's fees incurred in the divorce proceedings, all attorney's fees incurred in the event of an appeal, and all "reasonable attorney's fees . . . for any proceeding or any other matter relating to any term of this decree and any amendment thereto or to the child in this matter in the future." *Id.* at 289 (brackets omitted; alteration in original).

On appeal, the husband argued that the award of attorney's fees should be vacated either because the court did not offer a rationale for it or because the trial court failed to make a determination as to the reasonableness of the fees as required by *Gosselin v. Gosselin*, 136 N.H. 350, 353 (1992). *Id.* at 290. We inferred that the court's rationale for awarding fees was the divorce exception, and upheld the award. *Id.* at 290-91. We also held that all fees incurred by the wife during the divorce proceedings, and already paid by the husband, were actually part of the final property distribution and, therefore, not subject to the *Gosselin* reasonableness requirement. *Id.* at 291. With respect to the fees already incurred and not awarded as part of the property division, as well as any attorney's fees incurred in the future, we upheld the award, but also held that the court must comply with the *Gosselin* requirements. *Id.* at 291.

Here, the mother argues that because in *Hampers*, pursuant to the divorce exception, we upheld an order awarding prospective attorney's fees for any future proceedings between two formerly married parties, the exception should be extended to cover parenting proceedings between two parties who were never married. We disagree.

We have never before applied the divorce exception to a child custody and support case between unmarried parties. The divorce exception was established to protect both parties' rights to access to the courts and defend against a petition for divorce. *See Salito*, 107 N.H. at 77

("[S]mall sums have been ordered to be paid to the wife to enable her to make her defense [against the divorce]." (quotation omitted)). However, the theoretical basis for awarding attorney's fees in divorce cases is the potential ability of the court to offset the attorney's fees against the ultimate property distribution. *Cf. Morrison v. Holt*, 42 N.H. 478, 479 (1861) ("If the wife . . . prevails, her expenses are usually considered in awarding her alimony." (quotation omitted)); C. S. GARVEY, MASSACHUSETTS CONTINUING LEGAL EDUCATION: A PRACTICAL GUIDE TO DIVORCE IN NEW HAMPSHIRE, § 5.5.6 (2009) ("More often than not, any advance granted by the trial court will act against your client's property division.")

The mother argues that because the award of prospective attorney's fees in *Hampers* granted attorney's fees to the ex-wife after the marriage was over and the divorce was final, an award of fees is not dependent upon a valid marriage. However, the court's authority to make such an award originated from a divorce petition. The award was made as part of the divorce decree, and extended only to future actions relating to the decree, including any child-related issues that might arise in the future. Merely because the award of attorney's fees applied to future actions between two formerly married parties does not alter the fact that the award was based upon the once-valid marriage and the proceedings during the divorce action.

We construe the divorce exception narrowly and decline to extend it to cover parenting actions between unmarried parties. Accordingly, the court's January 23, 2011 order awarding attorney's fees is reversed. However, the mother further argues, and we agree, that the family division does have authority to order fees if it finds that the father has acted in bad faith, or makes other specific findings consistent with the *Harkeem* exception.

Finally, the mother makes a single-sentence argument in her brief that a rule permitting a married party to recover attorney's fees while not permitting a party who never married to recover attorney's fees violates the equal protection afforded under the New Hampshire and the United States Constitutions. *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972) ("The question for our determination . . . is whether there is some ground of difference that rationally explains the different treatment accorded married and unmarried persons under [the law]."); *see also Lalli v. Lalli*, 439 U.S. 259, 265 (1978) ("[C]lassifications based on illegitimacy are . . . invalid under the Fourteenth Amendment if they are not substantially related to

permissible state interests."). We find this argument to be inadequately developed and, therefore, decline to address it. *In the Matter of Martel & Martel*, 157 N.H. 53, 64 (2008).

*Reversed and remanded.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.