NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2014-0776


APPEAL OF NORTHRIDGE ENVIRONMENTAL, LLC
(New Hampshire Compensation Appeals Board)

Argued: October 8, 2015
Opinion Issued: March 22, 2016


Law Office of Leslie H. Johnson, PLLC, of Center Sandwich (Leslie H. Johnson on the brief and orally), for the petitioner.


Mullen & McGourty, PC, of Bedford (Craig A. Russo and Emily Conant on the brief, and Mr. Russo orally), for the respondents.


BASSETT, J. The respondents, Northridge Environmental, LLC (Northridge) and Arch Insurance Company (carrier), appeal a decision of the New Hampshire Compensation Appeals Board (CAB) granting the request by the petitioner, John Nicholson, for reimbursement for home health care services provided to him by his wife, Angela Nicholson. We affirm.

The CAB found, or the record supports, the following facts. In July 2010, the petitioner was seriously injured on the job while working for Northridge. After a period of hospitalization, the petitioner was discharged on August 25, 2010. The petitioner was prescribed medication and follow-up care, which included home health services "through VNA of Southern Carroll County . . . . This will include physical and occupational therapy, a home health aide,

and nursing services." The respondents offered to pay for the prescribed services, but the petitioner chose, instead, to have his wife provide the services.

Following the petitioner's release from the hospital, he had multiple open wounds that required daily cleaning, and he "needed 24/7 care, due to balance problems, short term memory loss, and inability to perform certain regular activities of daily living." Although the petitioner's wife did not have any formal medical training, she provided the required care to the petitioner, including cleaning his wounds, bathing him, dressing him, aiding him in the use of the bathroom, helping him move around, and constantly supervising him.

In September 2011, the petitioner sought reimbursement from the carrier for the services provided by his wife. After the carrier denied the request, the petitioner asked for a hearing before the New Hampshire Department of Labor (DOL). The petitioner sought reimbursement at a rate of $15 per hour, 16 hours per day, between August 25, 2010, the date of his release from the hospital, and June 4, 2012, the date of the DOL hearing. The DOL denied the request for reimbursement.

The petitioner appealed to the CAB. Following a de novo hearing, the CAB denied reimbursement. After unsuccessfully moving for reconsideration, the petitioner appealed to this court. We vacated the CAB ruling and remanded the case for the CAB to determine in the first instance whether, and to what extent, the services provided by the petitioner's wife were reimbursable.

On remand to the CAB, the respondents argued that, because the petitioner's wife did not fall within the definition of a "health care provider" as used in RSA 281-A:2, XII-b (2010), her services were not reimbursable. See RSA 281-A:24 (2010). Although the petitioner conceded that his wife was not a "doctor, chiropractor, or rehabilitation provider" as listed in RSA 281-A:2, XII-b, he asserted that her services were, nonetheless, reimbursable. (Quotation omitted.) The petitioner again sought reimbursement at the rate of $15 per hour for 16 hours per day between August 25, 2010, and June 4, 2012. The respondents did not challenge the hourly rate; however, they argued that the request for reimbursement for 16 hours per day was unreasonable.

The CAB first concluded that the petitioner was entitled to reimbursement for his wife's services. The CAB explained that:

> [O]ngoing home health services were required as prescribed by [the petitioner's doctor], and [the petitioner's wife] has adequately provided those services. . . . RSA 281-A:2, XII-b does not exclude a spouse as a home health care provider and should include a spouse as a home health care provider because the workers['] compensation statute is a remedial statute and a spouse is not excluded as a provider. Additionally, there is nothing in the

2

medical record or testimony that indicates [that the petitioner's wife] has provided inadequate or inappropriate home health care.

Regarding the amount of reimbursement, the CAB observed that the petitioner's wife offered inexact dates, times, and durations of various treatments that she provided and also lacked written records of her care. Nonetheless, the CAB concluded that it was reasonable to reimburse the petitioner for 12 hours per day at $15 per hour for the period between August 25, 2010, and June 4, 2012. The parties filed motions for reconsideration, which were denied. This appeal followed.

On appeal, the respondents argue that: (1) the CAB erred by determining that the petitioner was entitled to reimbursement for the services that his wife provided; (2) the CAB decision ordering reimbursement for 12 hours per day was arbitrary and not supported by evidence; (3) the CAB erred by implying that this court had already decided whether the petitioner's wife was a "health care provider"; and (4) the petitioner is not entitled to an award of attorney's fees for the first appeal to this court. The petitioner counters that the CAB did not err, and asserts that he is entitled to attorney's fees for the earlier appeal to this court. The petitioner also argues that some of the respondents' arguments are not preserved. However, because we are ruling in favor of the petitioner, we assume, without deciding, that the respondents preserved their arguments.

We will not disturb a CAB decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. Appeal of Kelly, 167 N.H. 489, 491 (2015); see RSA 541:13 (2007). We review the factual findings of the CAB deferentially and review its statutory interpretation de novo. Appeal of Phillips, 165 N.H. 226, 230 (2013). On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. Id. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose. Id. Thus, when construing it, we resolve all reasonable doubts in favor of the injured worker. Id.

The respondents first argue that "the workers' compensation statute does not allow for spouses to be reimbursed for home health care services provided to injured workers," and, therefore, the CAB erred by ordering reimbursement. They assert that only services provided by "health care providers" as defined in RSA 281-A:2, XII-b can be reimbursed, and that RSA 281-A:2, XII-b provides "an exhaustive and exclusive list of who is considered a health care provider for the purpose of the workers' compensation statute." According to the

3

respondents, because the petitioner's wife was not a "trained, licensed medical professional[]," she did not qualify as a "health care provider," and, therefore, the CAB erred when it concluded that her services were reimbursable.

We observe that "[a]s a general rule, the rights and liabilities of the parties in a workers' compensation case are determined by the law in effect on the date of injury." Appeal of Silk, 156 N.H. 539, 541 (2007). Accordingly, we will analyze the statutes in effect when the petitioner suffered his injury in July 2010. See id. The applicable version of RSA 281-A:24, I, states, in pertinent part, that "[t]he employer or the employer's insurance carrier shall pay the full amount of the health care provider's bill unless the employer or employer's insurance carrier can show just cause as to why the total amount should not be paid." RSA 281-A:2, XII-b provides that "'[h]ealth care provider' as used in this chapter includes doctors, chiropractors, rehabilitation providers, health services as defined in RSA 151-C:2, XVIII, health care facilities as defined in RSA 151-C:2, XV-a, and health maintenance organizations as defined in RSA 151-C:2, XVI."

We first note that the legislature has not explicitly defined the phrase "health care provider"; rather, it has provided a list of examples in RSA 281-A:2, XII-b. Although the respondents argue that the list in RSA 281-A:2, XII-b is exhaustive, we are not persuaded. The legislature's use of the term "includes" in the statute demonstrates that the list of "health care providers" is not exhaustive. See Conservation Law Found. v. N.H. Wetlands Council, 150 N.H. 1, 5 (2003) (observing that the term "including" in a statute "indicates that the factors listed are not exhaustive"); cf. Silva v. Botsch, 120 N.H. 600, 602 (1980) ("Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive."). Accordingly, contrary to the respondents' argument, the mere fact that spouses are not listed in the statute does not require the conclusion that the petitioner's wife cannot qualify as a "health care provider."

The respondents assert, nonetheless, that, because RSA 281-A:2, XII-b lists entities such as doctors and chiropractors as "health care providers," one must be a "trained, licensed medical professional[]" in order to qualify as a "health care provider." See RSA 281-A:2, XII-b. We disagree. In addition to listing doctors and chiropractors as "health care providers," RSA 281-A:2, XII-b states that "health services as defined in RSA 151-C:2, XVIII" are also included as "health care providers." The term "health services" is defined by RSA 151-C:2, XVIII (2005) as "clinically related diagnostic, treatment, or rehabilitative services, as well as preventive services, and includes, without limitation, alcohol, drug abuse, and mental health services." Because there is nothing in its definition that limits "health services" to only services provided by trained medical professionals, we conclude that one may be able to render "health services," and, thus, qualify as a "health care provider," without being a trained medical professional. See RSA 151-C:2, XVIII.

4

In this case, the petitioner's wife acted pursuant to a doctor's prescription when she provided services to the petitioner, and her services aided in his recovery. Accordingly, we conclude that she provided "clinically related . . . treatment" under RSA 151-C:2, XVIII. Thus, although the petitioner's wife was not a trained medical professional, she provided "health services," and, therefore, qualified as a "health care provider." See RSA 281-A:2, XII-b; RSA 151-C:2, XVIII.

The respondents also argue that allowing for reimbursement for a medically untrained and unlicensed spouse is "unjust and unreasonable" because it "places too high a burden on the [respondents], and creates an unreasonable expectation for employers and insurance carriers to pay compensation to family members who provide care for injured workers." They claim that the legislative history of, and the public policy behind, the workers' compensation statute support their argument that higher costs and fraudulent claims will ensue if medically untrained spouses or family members qualify to be reimbursed for services that they provide to injured workers.

Although the concerns raised by the respondents may be legitimate, the respondents raise them in the wrong forum. These concerns implicate matters of public policy that are better left to the legislature; additionally, we do not consider legislative history when, as here, the statutes are clear on their face. See In re Guardianship of Eaton, 163 N.H. 386, 389, 393 (2012) (explaining that we reserve matters of public policy for the legislature and do not consider legislative history when statutes are clear on their face). Finally, we note that "if the legislature disagrees with our construction of its statutory scheme, it is free to amend the statutes as it sees fit." In the Matter of Fulton & Fulton, 154 N.H. 264, 268 (2006) (quotation omitted).

Accordingly, because we conclude that the petitioner's wife qualified as a "health care provider," the respondents are required to pay for the services that she provided. See RSA 281-A:24, I. We, therefore, conclude that the CAB did not err when it decided that the petitioner was entitled to reimbursement for his wife's services.

After the CAB determined that the services provided by the petitioner's wife were reimbursable, it turned to the issue of the amount of reimbursement. Although the CAB observed in its decision that the petitioner's wife lacked written records of her care and failed to provide exact dates, times, and durations of the services that she provided, it, nonetheless, concluded that the petitioner should be reimbursed for 12 hours of home health care services per day between August 25, 2010, and June 4, 2012, at a rate of $15 per hour.

On appeal, the respondents do not challenge the $15 per hour rate; however, they argue that the CAB erred when it ordered reimbursement for 12 hours per day. They assert that, because there are no records documenting

the precise dates and times when the petitioner's wife provided services, and because she was not providing medically-related services at all times, "it is unfair to order the [respondents] to reimburse . . . for services that cannot be accurately quantified. Without better documentation for the services provided, it is virtually impossible to determine whether twelve hours per day, every day would be an appropriate reimbursement rate in this instance."

"In reviewing the CAB's findings, our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." Phillips, 165 N.H. at 235 (quotation and brackets omitted). "The CAB's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the CAB's decision reasonably could have been made." Id. (quotation and brackets omitted).

At the CAB hearing following remand, the only witness to testify was the petitioner's wife. She testified that, after her husband was released from the hospital, she provided services for him on a regular basis, which included cleaning his wounds, changing his bandages, helping him bathe, assisting in dressing him, aiding him in the use of the bathroom, helping him move around, and taking him to various appointments. She also testified that, when the petitioner would wake up at night — which would generally occur between one to three times each night — she would assist him with "whatever it is he need[ed] and then assist him back to bed." She further testified that she constantly supervised the petitioner, following him wherever he went and "tend[ing] to him all day long." The petitioner's wife acknowledged that she did not keep written records regarding the specific dates and times of many of the services that she provided. She also acknowledged that she would have performed certain tasks — such as preparing meals and doing laundry — regardless of her husband's injury, and that every day there were times when her husband did not require her assistance.

Although it may be a sound practice for health care providers to keep detailed written records, and although the petitioner's wife may not have actively provided continuous assistance to her husband each day, we cannot conclude that the CAB erred when it determined that reimbursement for 12 hours per day was reasonable. There is competent evidence in the record concerning both the amount of assistance and supervision that the petitioner required, and the nature of the services that his wife provided each day, sufficient to support the CAB's determination. See id.

Next, the respondents challenge the CAB decision denying their motion for rehearing and reconsideration. The respondents argue that the CAB erroneously implied in its denial that this court had already decided whether a spouse was entitled to reimbursement for services rendered to an injured worker. They also argue that the CAB refused to revisit the merits of the

6

spousal reimbursement issue based upon the incorrect assumption that we had previously resolved the issue. Thus, the respondents assert that the "denial of [their] Motion for Rehearing/Reconsideration on that premise was erroneous as a matter of law and should be overturned." To the extent that addressing this issue requires us to interpret the CAB decision, such interpretation presents a question of law. See Guy v. Town of Temple, 157 N.H. 642, 649 (2008) ("[T]he interpretation of a tribunal's order presents a question of law, which we review de novo.").

We agree with the respondents that we did not previously address whether the services provided by the petitioner's wife were reimbursable. In fact, in our prior order, we remanded for the CAB to determine "the level of reimbursement, if any, to be awarded [to the petitioner's wife]." (Emphasis added.) Nonetheless, we disagree with the respondents' interpretation of the CAB decision to deny their motion for rehearing and reconsideration. When the CAB's decision on the reconsideration motion is read in conjunction with its merits decision, there is no indication that the CAB was unwilling to revisit the spousal reimbursement issue because it had concluded that we had already decided the issue; rather, the decision on reconsideration demonstrates that the CAB denied the motion because it concluded that the respondents were merely repeating arguments that it had already rejected. See Barrows v. Boles, 141 N.H. 382, 397 (1996) (affirming trial court's denial of motions for reconsideration that "simply reiterated the arguments made at trial"). Accordingly, we find no error on these grounds.

Finally, we turn to the issue of whether the petitioner is entitled to the attorney's fees that he incurred in the prior appeal to this court. We note that the parties do not appeal the CAB's award of attorney's fees incurred in the two proceedings before it.

The general rule in New Hampshire is that each party to litigation must pay his or her own attorney's fees. In the Matter of Mallett & Mallett, 163 N.H. 202, 211 (2012). However, there are exceptions to this rule. Id. One exception is when a statute specifically authorizes the award of attorney's fees. Id. RSA 281-A:44, I (2010), states, in relevant part, that:

> (a) In any dispute over the amount of the benefit payable under this chapter which is appealed to the board or supreme court or both, the employee, if such employee prevails, shall be entitled to reasonable counsel fees and costs as approved by the board or court and interest on that portion of any award the payment of which is contested. For the purposes of this paragraph, to "prevail" means:
>
> > (1) If the employee is the appealing party, the employee shall have received an award for disability benefits, medical,

7

hospital, and remedial care, a scheduled permanent impairment award, vocational rehabilitation, or reinstatement of the employee, which is greater in amount than awarded by the decision which is the subject of the appeal; or

(2) If the appeal is by the employer or insurance carrier, the appealed decision shall have been affirmed.

(Emphases added.)

Following our decision in the earlier appeal to this court, the petitioner filed a motion in this court seeking attorney's fees and costs incurred in that appeal. We declined to take action on the motion at that time, and ordered the parties to address the following questions:

Does the definition of "prevail" in RSA 281-A:44, I, as applied to a request for attorney's fees and costs incurred in a supreme court appeal, require the claimant to have received a decision from this court that itself awards "disability benefits, medical, hospital, and remedial care, a scheduled permanent impairment award, vocational rehabilitation, or reinstatement of the employee, . . . greater in amount than awarded by the decision which is the subject of the appeal?" Or, instead, does the definition of "prevail" in RSA 281-A:44, I, as applied to a request for attorney's fees and costs incurred in a supreme court appeal, extend more broadly to the situation presented here, in which the claimant received a favorable decision from this court (but not an award of benefits or care) and then obtained from the compensation appeals board on remand a favorable award? Cf. Appeal of Silk, 156 N.H. 539 (2007) (discussing statutory change to the definition of "prevail"). If the latter, does the claimant's entitlement to attorney's fees and costs incurred in [the earlier appeal] depend, in whole or in part, on the outcome of the issues raised in the appeal document filed by [the respondents] in [the present appeal]?

Resolving this issue requires us to engage in statutory interpretation. "When construing the Workers' Compensation Law, we give the broadest reasonable effect to its remedial purpose, resolving all reasonable doubts in favor of the injured worker." Silk, 156 N.H. at 541. Our liberal construction of the Workers' Compensation Law applies to our interpretation of RSA 281-A:44, I, which governs the award of attorney's fees and costs. See id. at 541-44.

In our decision in the earlier appeal, we vacated the CAB decision that had denied the request for reimbursement, and we remanded for the CAB to determine whether, and to what extent, the services provided by the petitioner's wife were reimbursable. On remand, the CAB concluded that her services were

reimbursable and calculated the reimbursement amount, and we have affirmed that decision.

Under these circumstances, we conclude that the petitioner "prevail[ed]" under RSA 281-A:44, I, in his earlier appeal to this court. Although we did not award benefits to the petitioner in the earlier appeal, our prior decision was an essential step in the process that eventually led to the CAB awarding reimbursement. See RSA 281-A:44, I(a)(1) (stating that "prevail" means that the "employee shall have received an award for . . . benefits, [or] . . . care, . . . which is greater in amount than awarded by the decision which is the subject of the appeal").

In Silk, we applied a prior version of RSA 281-A:44, I, and concluded that an employee was entitled to attorney's fees incurred on appeal to this court because, although we did not award medical payments to the employee, she received a right to a hearing on remand. Silk, 156 N.H. at 542-43. We also observed that the statute recently had been amended, and that under the new definition of "prevail" in RSA 281-A:44, I, a claimant who simply "appealed a board's decision and obtained a new hearing before the board" may no longer be deemed to have "prevailed." Id. at 543. That may well be true, but those are not the circumstances present in this case. Here, the petitioner not only successfully appealed the CAB decision to this court and obtained a new hearing before the CAB, but, on remand, he also succeeded on the merits before the CAB, and we have affirmed that decision. Cf. id. at 542-44. To artificially view the earlier appeal in isolation without regard to the outcome before the CAB on remand and on subsequent appeal to this court, would ignore the fact that, without our remand order, the CAB would not have awarded reimbursement, and would be at odds with our liberal construction of the Workers' Compensation Law, see Phillips, 165 N.H. at 230. Accordingly, we conclude that the petitioner is entitled to reasonable attorney's fees and costs incurred in the earlier appeal to this court.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

9