10th Circuit Court — Derry Family Division
No. 2011-736

IN THE MATTER OF GABRIELLE MULLER AND WILLIAM MULLER

Argued: September 13, 2012
Opinion Issued: January 11, 2013

*Primmer Piper Eggleston & Cramer, PC*, of Manchester (*Doreen F. Connor* on the brief and orally), for the respondent.

*Bossie & Wilson, PLLC*, of Manchester (*Andrew K. Wilson* on the brief and orally), for the petitioner.

CONBOY, J. In this appeal from a final divorce decree issued by the 10th Circuit Court — Derry Family Division (*Moore*, J.), the respondent, William Muller, appeals the trial court's rulings apportioning the equity in the marital home and imputing $68,000 in annual income to him for child support purposes. We affirm in part, vacate in part, and remand.

The following facts are drawn from the record. The petitioner, Gabrielle Muller (Wife), and William Muller (Husband) married in October 2006 and have one minor child, born in July 2007. The parties purchased a home in Auburn in November 2006 with funds from a mortgage loan in the amount of $200,000 from Bank of America, N.A. and $186,332.23 in cash from the Husband's parents. The marital home is in the Husband's name. The parties agreed that at the time of trial the home was worth $340,000.

At trial, the parties disagreed as to whether the $186,332.23 from the Husband's parents was a loan or a gift: the Husband asserted that the money was lent by his parents pursuant to an oral agreement; the Wife understood the money to be a gift, and asserted that the Husband's parents never indicated that they expected to be repaid. At the time the home was purchased, no second mortgage was filed with the registry of deeds.

In August 2009, nearly three years after the purchase of the marital home, the Husband executed a promissory note to his parents in the amount of $186,332.23, which was signed by the Husband and his father. The typewritten date on the note was November 22, 2006, but the Husband did not actually sign the note until August 18, 2009. Approximately one month later, in September 2009, the Wife filed for divorce. On October 14,

2009, the Husband filed with the registry of deeds an undated mortgage deed to his parents, which referenced a November 22, 2006 promissory note. Only the Husband signed the mortgage deed. The deed was attested to by a notary who did not indicate when the Husband signed it.

Eleven months before trial, the Husband was terminated from his job for poor job performance after multiple warnings. He remained unemployed up to the time of trial.

After a final evidentiary hearing, the trial court awarded the Wife a fault-based divorce pursuant to RSA 458:7, V (2004) (fault based on treatment so as to seriously injure health or endanger reason). In allocating the marital debt, the trial court ruled that the Husband was to be "solely responsible for any obligation due his parents relative to the marital residence." The court ordered that the residence "shall immediately be placed on the market for sale . . . at a reasonably competitive price," which the court expected would "maximize[ ] the net proceeds after payment of the *first mortgage*, taxes, and standard closing costs." (Emphasis added.) The court ordered "the net proceeds of the property" to be "divided equally between the parties." It continued: "In entering the aforementioned order, this Court is entering a specific finding that it does not find the [Husband's] representations that the parties agreed to [a] $180,000 loan from the [Husband's] parents to be credible." After marshaling the factual bases for its opinion that the Husband and his parents drafted the promissory note and second mortgage in "an attempt to divest the [Wife] of any interest in the marital residence," the trial court ruled that the note and mortgage did not "evidence a valid debt." The court concluded its order evenly dividing the equity in the marital residence by noting:

> Due to the fact that this Court is entering a finding that [the Husband's parents'] contribution to the marital residence is not recognized as a debt this Court is left with no other option than to determine that it was initially a gift to the [Husband] and as such has no bearing on the disposition/division of the equity in the marital residence.

The court also found the Husband voluntarily unemployed/underemployed (hereinafter "unemployed"), and, in calculating child support, imputed $68,000 in annual income to him.

On appeal, the Husband argues that: (1) the trial court erred as a matter of law by effectively ordering the parties to disregard the $186,332.23 promissory note and mortgage deed to the Husband's parents; (2) the trial court unsustainably exercised its discretion by failing to award the Husband the $186,332.23 payment from the Husband's parents in view of the fact that the court characterized it as a gift; (3) the trial court unsustainably

exercised its discretion in awarding the Wife fifty percent of the equity in the marital home; and (4) the trial court's finding that the Husband was voluntarily unemployed and its decision to impute $68,000 in annual income to him were legally erroneous and unsupported by the record.

We first address the Husband's argument that the trial court erred as a matter of law by disregarding the Husband's parents' interest in the marital residence. He asserts that: (1) the family division lacked subject matter jurisdiction to effectively invalidate the parents' mortgage deed and promissory note, since disputed claims to marital real estate asserted by third parties must be brought in the superior court in the first instance; (2) the court's order, effectively abolishing the Husband's parents' interest, is not binding upon the parents, since they were necessary parties to the proceeding, but did not participate (nor could they have, since the family division lacks jurisdiction over them); (3) the order vitiating the Husband's parents' property interest in the marital residence was entered without due process of law, in violation of their fundamental rights; and (4) the court's order that the marital home be sold cannot be effectuated as a practical matter since clear title could not be conveyed while the Husband's parents continue to hold a mortgage on the property.

The Wife responds that the trial court did not err when it ordered the sale of the marital residence and distribution of the resulting equity without regard to the Husband's parents' interest because "the property was clearly an asset of the marriage, however encumbered, and clearly available for disposition as entered by the trial [c]ourt." She agrees with the Husband that the trial court "invalidated" the Husband's parents' promissory note and mortgage deed, but contends that the recorded instruments "should not operate to invalidate the trial [c]ourt's [o]rder to sell the marital home," because the court determined that she did not agree to any obligation to the Husband's parents, and found that the recorded mortgage constituted fraud.

We note first that the Wife's argument that the recorded mortgage posed no impediment to the court's disposition of the property is unavailing. "The equitable interest of a non-owner spouse in marital property does not super[s]ede the rights of creditors of the owner spouse during the pendency of the couple's divorce proceeding." *In re Skorich*, 332 B.R. 77, 84 (Bankr. D.N.H. 2005); *cf. In the Matter of Jasper-O'Neil & O'Neil*, 149 N.H. 87, 89 (2003) (despite parties' stipulated division of marital property, residence remained subject to bank's pre-divorce attachment). Both parties' arguments therefore require us to analyze the family division's jurisdiction to effectively invalidate a third party's mortgage interest in real property. "A court lacks power to hear or determine a case concerning

subject matters over which it has no jurisdiction." *Daine v. Daine*, 157 N.H. 426, 428 (2008) (quotation and brackets omitted). "The ultimate determination as to whether the trial court has jurisdiction in this case is a question of law subject to *de novo* review." *In the Matter of O'Neil & O'Neil*, 159 N.H. 615, 622 (2010).

■ "The family division is a court of limited jurisdiction, with exclusive power conferred by statute to decide cases in certain discrete areas, including petitions for divorce." *Id.* (quotation omitted). Because the powers and jurisdiction of the family division are limited to those conferred by statute, *see In the Matter of Mallett & Mallett*, 163 N.H. 202, 207 (2012), we look to the relevant statutes to determine whether the family division had subject matter jurisdiction to determine the validity of the Husband's parents' mortgage interest, or whether, as the Husband argues, that claim must be addressed in the superior court in the first instance. Neither party argues that the superior court would lack jurisdiction over this dispute; the question before us is whether the family division has jurisdiction, either exclusive or concurrent with that of the superior court, to resolve questions of a third party's claim of interest in marital property.

"When undertaking statutory interpretation, we first examine the language found in the statute and where possible, we ascribe the plain and ordinary meanings to words used." *In the Matter of Gray & Gray*, 160 N.H. 62, 65 (2010) (quotation and brackets omitted). When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent. *Id.* "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Id.* (quotation omitted). "We interpret statutes not in isolation, but in the context of the overall statutory scheme." *Id.* (quotation omitted).

■ The legislature created the judicial branch family division to provide "prompt and fair resolution of family issues by justices and marital masters specially selected and trained to deal effectively with such issues," and to assign "all family matters of a single family to one family division justice or marital master located in a family division court that is geographically accessible to the family." RSA 490-D:1 (2010) (amended 2012). To this end, the statute provides that jurisdiction over, *inter alia*, "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity," are "exclusively exercised through the judicial branch family division as procedurally jurisdiction was previously exercised in the superior . . . court[ ]." RSA 490-D:2, I (2010). "Accordingly, in this state, original jurisdiction is granted to the judicial branch family division regarding divorce matters." *Daine*, 157 N.H. at 427.

■ Although RSA chapter 490-D expressly defines the family division's jurisdiction as encompassing "divorce" generally, the overall scheme of the relevant divorce statutes governs issues of, among other things, the division of property and orders of support. *Mallett*, 163 N.H. at 209. Under these statutes, the family division has the authority to value and divide marital property, including in cases where the value or ownership of the assets may be complex. *See, e.g., In the Matter of Cottrell & El-Sherif*, 163 N.H. 747, 748-49 (2012) (upholding family division's valuation of divorcing party's dental practice). Further, the legislature's recognition that the need to render equitable orders is inherent in the resolution of divorce matters is reflected in RSA 490-D:3 (2010), which provides that "the judicial branch family division shall have the powers of a court of equity in cases where subject matter jurisdiction lies with the judicial branch family division."

■ However, RSA 458:16-a (2004) allows the family division to distribute only property that belongs to the divorcing parties. *See* RSA 458:16-a, I ("Property shall include all tangible and intangible property and assets, real or personal, *belonging to either or both parties*, whether title to the property is held in the name of either or both parties." (emphasis added)); *In the Matter of Chamberlin & Chamberlin*, 155 N.H. 13, 17 (2007) (holding that, because trust corpus "was not an asset belonging to either or both of the parties at the time of their divorce, the trial court did not commit legal error by excluding [it] from the marital estate"). RSA 458:16-a, II also allows the family division to distribute marital property only to the divorcing parties themselves. RSA 458:16-a, II ("When a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties."); *In the Matter of Beal & Beal*, 153 N.H. 349, 350 (2006) ("The plain language of [RSA 458:16-a, II] authorizes trial courts to distribute marital property 'between the parties.' Nothing in the statute authorizes trial courts to order a sale of the parties' marital assets to pay their creditors."). " 'We believe it is sound policy to adopt a rule which will not require creditors to intervene in contested dissolution actions in order to litigate their claims. To do otherwise would be to turn a dissolution action into a creditor's proceeding.' " *Id.* at 351 (quoting *Lee v. Lee*, 649 P.2d 997, 1003 (Ariz. Ct. App. 1982)).

■■ Because the mortgage interest at issue here belongs to a third party, the family division lacked the jurisdiction to invalidate it. Our holding today does not imply that the family division lacks jurisdiction to divide an encumbered asset; the division of the net equity in a marital home subject to a mortgage, for example, is within the statutory purview of the family division, as is the division of marital debt. *See, e.g., In the Matter of Costa & Costa*, 156 N.H. 323, 327 (2007) (family division's award to one party of

bulk of divisible marital assets and debt was sustainable exercise of discretion when supported by factors set forth in RSA 458:16-a). However, when dividing such property pursuant to RSA 458:16-a, the family division does not have the jurisdiction to disregard or invalidate a third party's claim of interest in marital property.

Our reading of the powers granted the family division under the current statutory scheme is supported by canons of statutory interpretation. Neither RSA chapter 490-D nor RSA chapter 458 reflects an intent on the part of the legislature to grant the family division jurisdiction, either exclusive or concurrent with the superior court, to invalidate the property interest of a non-divorcing party. In the absence of express legislative authorization, the family division has no jurisdiction to determine the validity of a third party's interest in the parties' marital property. *See Daine*, 157 N.H. at 427 ("Because divorce is statutory, the court has only such power in that field as is granted by statute."). Had the legislature intended to grant the family division jurisdiction to determine the validity of third parties' asserted interests in real property, it could have done so.

This interpretation is also supported by the development of the law in the probate court context. In the absence of an explicit legislative grant of probate court jurisdiction over real property disputes, we held in *O'Dwyer* that the superior court was the proper forum for such a dispute, and the probate court lacked such jurisdiction. *See In re Estate of O'Dwyer*, 135 N.H. 323, 324 (1992) (holding that a statute conferring upon the probate court jurisdiction over all matters and things of probate jurisdiction relating to the sale, settlement, and final distribution of estates of deceased persons did not grant the court jurisdiction to determine title to real estate in order to establish whether it was an asset of the estate). After our decision in *O'Dwyer*, "the legislature effectively expanded the probate court's jurisdiction to encompass disputes concerning the real estate of a decedent through the Omnibus Justice Act of 1993," which expressly granted the probate court "jurisdiction to resolve issues involving real estate of the decedent if the property is in the estate of the decedent." *In re Estate of Porter*, 159 N.H. 212, 214-15 (2009) (quotations omitted); *see also* RSA 547:3 (2007 & Supp. 2012) (probate court jurisdiction); RSA 547:11-b (2007) (granting probate court jurisdiction over declaratory judgment actions regarding title to real or personal property in decedent's estate); RSA 547:11-c (2007) (granting probate court jurisdiction over quiet title actions regarding real or personal property in decedent's estate).

Because "[w]e interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that

the legislature did not include," *Beal*, 153 N.H. at 350, we do not read the current versions of RSA 490-D:2 or RSA 458:16-a to confer jurisdiction on the family division to invalidate a non-divorcing party's claim of interest in a marital asset. Accordingly, we vacate the trial court's order for the sale of, and distribution of the equity in, the marital home, and remand for proceedings consistent with this opinion. Any final ruling by the trial court concerning distribution of the equity in the marital home must account for the exclusive jurisdiction of the superior court to determine the validity of the Husband's parents' claim of interest in the marital home. Given our ruling on this issue, we do not address the Husband's other claims of error related to the division of equity in the marital home or the Husband's parents' contribution thereto.

Finally, the Husband asserts that the record does not support the trial court's finding that he was voluntarily unemployed and its imputation to him of $68,000 in annual income for child support purposes. Specifically, the Husband advances four claims. First, he maintains that the trial court erred by finding him voluntarily unemployed in its final order because the court had earlier found that he was not voluntarily unemployed. Second, he contends that, because testimony at the final hearing reflected that he had been involuntarily terminated from his employment, the trial court's finding of voluntary unemployment constituted legal error. Third, he argues that the trial court erred by imputing income only to him and not to the Wife, even though she was also unemployed. Fourth, he contends that the trial court erred by imputing income to him at his highest previous income level. We disagree with all four contentions.

As to his first claim of error, the Husband relies on two October 2010 temporary orders, which, according to the Husband, preclude an ultimate finding of voluntary unemployment. In an October 6, 2010 temporary order, the trial court granted the Husband's request for reduction of his child support obligation to reflect his employment termination. However, the court made no ruling as to whether the Husband was voluntarily unemployed. Moreover, the court expressly stated that its order was "subject to modification upon the completion of discovery, [and] subject to recapture at the parties' final hearing." In its subsequent temporary order of October 25, 2010, the court again made no ruling as to whether the Husband was voluntarily unemployed. Because the temporary orders were subject to modification at the final hearing, we reject this claim of error.

The Husband next argues that because he had been involuntarily terminated from his employment eleven months before trial, the trial court erred in finding that he was voluntarily unemployed. Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, *see In the Matter of Donovan & Donovan*,

152 N.H. 55, 59 (2005), we will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. *In the Matter of Scott & Pierce*, 160 N.H. 354, 358 (2010).

In calculating gross income for child support purposes, a trial court has the discretion to consider "the difference between the amount a parent is earning and the amount a parent has earned in cases where the parent voluntarily becomes unemployed or underemployed, unless the parent is physically or mentally incapacitated." RSA 458-C:2, IV(a) (2004). Whether a party is voluntarily unemployed is a question for the fact finder, whose decision will not be disturbed on appeal if supported by evidence in the record. *In the Matter of Stall & Stall*, 153 N.H. 163, 167 (2005).

Our case law regarding a trial court's consideration of the circumstances of a parent's departure from employment has evolved over the past twenty years. Prior to the enactment of RSA chapter 458-C, we held that a parent who was terminated from employment because of his own wrongdoing was not eligible for a reduction in support payments due to his reduced ability to pay. *Noddin v. Noddin*, 123 N.H. 73, 76 (1983). After the enactment of RSA chapter 458-C, however, we ruled that RSA 458-C:2, IV(a) supersedes our decision in *Noddin*. *In the Matter of Rossino & Rossino*, 153 N.H. 367, 370 (2006). In light of *Rossino*, we subsequently vacated a trial court's finding of voluntary underemployment "to the extent that the trial court found the [parent] to be voluntarily underemployed because he lost his job(s) due to his own wrongdoing." *In the Matter of Sarvela & Sarvela*, 154 N.H. 426, 436 (2006).

 However, the holding in *Sarvela* does not preclude a trial court from considering facts and circumstances bearing on a parent's intent to avoid payment of child support, including the facts and circumstances surrounding the parent's termination from employment. *See id.* at 434-36. In fact, in the same year we decided *Sarvela*, we recognized the relevance of a party's intent to avoid child support on the question of voluntary unemployment. *See In the Matter of Bazemore & Jack*, 153 N.H. 351, 353 (2006) (noting a voluntarily unemployed parent did not terminate employment "with the intent of avoiding his child support obligation or thwarting [the other parent's] ability to receive child support in an appropriate amount"); *see also In the Matter of Lynn & Lynn*, 158 N.H. 615, 616, 618 (2009) (affirming the trial court's decision not to impute income despite a finding of voluntary underemployment where the record failed to support that a parent reduced income to circumvent child support guidelines).

 Here, the record supports the trial court's finding that the Husband was voluntarily unemployed. The trial court noted that the circumstances of the Husband's termination were "suspect," but it primarily focused on the

Husband's actions during the eleven months between the time that he lost his job through the commencement of trial, and found that the Husband had the ability to become employed. The trial court did not find credible the Husband's assertion that he was looking for work "all the time." At the final hearing, the Husband testified that his efforts to seek employment consisted mainly of checking a website, jobsnh.com, every day. *Cf. Stall*, 153 N.H. at 167 (evidence that parent had been looking for employment did not necessarily preclude a finding of voluntary unemployment). Further, the trial court characterized the Husband's failure to pay his share of the child support as "a weapon" with a "well documented history." For example, the Husband testified that he paid for a $5,000 motorcycle repair rather than paying his child support arrearage of more than $7,000. Moreover, there was no evidence that the Husband was physically or mentally incapacitated. On this record, we find no error in the court's conclusion that the Husband was voluntarily unemployed.

 Nor does the trial court's decision to impute income only to the Husband and not to the Wife support reversal. The Husband alleges simply that the Wife, like the Husband, is unemployed, and that in a temporary order, the trial court suggested that she seek employment by the time of the final hearing. The trial court found, and the record reflects, that the Wife is the primary caregiver to the parties' child. Although the court also stated that it anticipated that the Wife would be "gaining full-time employment in the very near future," we do not conclude that the Husband has met his burden of establishing that the court's imputation of income only to him was an unsustainable exercise of discretion. *See Donovan*, 152 N.H. at 59.

If a trial court determines that a parent is voluntarily unemployed or underemployed, the court "may consider as gross income the difference between the amount that parent is earning and the amount that parent has earned." RSA 458-C:2, IV(a). When he was terminated from his employment eleven months prior to trial, the Husband was earning an annual salary of approximately $68,000. Under all the circumstances, we find no error in the trial court's imputation of $68,000 in annual earnings to the Husband for purposes of calculating child support.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.