NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Portsmouth Family Division
No. 2020-0110

PETITION OF NEW HAMPSHIRE DIVISION FOR CHILDREN, YOUTH AND FAMILIES

Argued: October 28, 2020
Opinion Issued: December 9, 2020

Gordon J. MacDonald, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the brief and orally), for the New Hampshire Division for Children, Youth and Families.

John F. Driscoll, of Portsmouth, on the memorandum of law, for the guardians.

John Greabe and Risa Evans, University of New Hampshire, Franklin Pierce School of Law (Mr. Greabe and Ms. Evans on the brief, and Mr. Greabe orally), for the Warren B. Rudman Center for Justice, Leadership & Public Service, as amicus curiae.

HICKS, J. The New Hampshire Division for Children, Youth and Families (DCYF), a division of the New Hampshire Department of Health and Human Services (DHHS), petitions this court for a writ of prohibition to prevent the circuit court from joining DCYF as a party to an ongoing guardianship case

and from ordering the agency to provide services for the benefit of private litigants. DCYF contends that the circuit court lacked the authority to join the agency to the private case because no statute authorizes the circuit court to do so. We agree and, accordingly, grant DCYF's petition for a writ of prohibition.

I

This petition arises from a guardianship case involving an ongoing dispute between the father of a three-year-old child and the child's guardians, who are the child's maternal grandparents. On September 10, 2019, the Circuit Court (Hall, J.) issued a written order addressing the father's motion for scheduled parenting time. The father alleged that the child's guardians were willfully interfering with his rights to unsupervised parenting time and notice of his child's medical appointments as established by previous court orders. The circuit court credited the father's allegations and expressed concern that the case "has not progressed" since the last hearing in September 2018. The court concluded its order as follows:

> [The father] is young. He is trying to be self-reliant and to increase his parenting skills and experience to enjoy parenting time with his [child]. He needs assistance and the ability to learn to care for [his child] independently. It is imperative that father be afforded the opportunity to do so.
>
> DCYF is therefore ordered to provide the services of a parent [aide] to supervise visits between father and [the child] on a weekly basis for 8 hours per week. This order is entered pursuant to RSA 170-G:4 II. The Court joins DCYF as a party to the case. In addition to a parent [aide], the Court orders DCYF to provide father with such other supports as may be necessary to facilitate future expansion of father's parenting time, including overnight visits.

DCFY filed a motion to reconsider on September 20, 2019, arguing that RSA 170-G:4 did not authorize the trial court to order DCYF to provide services in a minor guardianship proceeding under RSA chapter 463 in which the child is not at risk of placement with DHHS in connection with abuse or neglect. On January 29, 2020, the Circuit Court (Pendleton, J.) conducted a motion hearing and issued a written order denying DCYF's motion to reconsider. As in the first order, the circuit court relied on RSA 170-G:4 and concluded that "without resolution the child may be at risk of placement with the 'Department.'" The circuit court construed Judge Hall's original order as merely a "referral to the Division," and noted that DCYF had been "joined" to the case as "a means of allowing the Division input into the case."[1] In addition,

---

[1] At a motion hearing in the circuit court, DCYF explained that the agency typically receives referrals from courts in one of two ways. First, if a court suspects that there is a problem in a

the circuit court required DCYF to provide the services originally ordered for six weeks and update the court with a report of those services along with copies of the parenting supervision records.

On February 24, 2020, DCYF filed a petition for original jurisdiction, which we accepted on May 1, 2020. Because no party in the guardianship matter opposed DCYF's petition in this court, we invited the University of New Hampshire School of Law Warren B. Rudman Center for Justice, Leadership & Public Service to file a brief as amicus curiae in support of the circuit court's orders.[2] See In re Guardianship of L.N., 173 N.H. 77, 78 n.1 (2020) (citing Mata v. Lynch, 135 S. Ct. 2150, 2154 (2015)) (where parties agreed on legal issue, amicus curiae was appointed to defend the appealed decision). We now grant DCYF's petition for a writ of prohibition.

II

A writ of prohibition is an extraordinary remedy. Petition of Cigna Healthcare, 146 N.H. 683, 687 (2001). It is used to prevent subordinate courts or other tribunals, officers, or persons from usurping or exercising authority with which they are clearly not vested. See id.; see also Appeal of McDonough, 149 N.H. 105, 114 (2003). This court has original jurisdiction to issue a writ of prohibition, RSA 490:4 (2010); however, we will not issue the writ unless "there are special and important reasons for doing so." Sup. Ct. R. 11(1). Our authority to issue a writ of prohibition is discretionary, and we do so "with caution and forbearance," and "only when the right to relief is clear." Cigna, 146 N.H. at 687 (citation omitted). Here, the right to relief is clear. Nothing in RSA 170-G:4 or RSA chapter 463 authorizes the circuit court to join DCYF as a party to a private guardianship case and order that DCYF provide services to the private litigants.

The circuit court is a statutory court of limited subject matter jurisdiction. In re Search Warrant for Records from AT&T, 170 N.H. 111, 113 (2017). Whether the circuit court has subject matter jurisdiction is a matter of statutory interpretation, which presents a question of law subject to de novo review. See Rogers v. Rogers, 171 N.H. 738, 743 (2019); see also In the Matter

---

family that raises concern about a child's welfare, the court may refer the case to DCYF by calling central intake. Central intake is the primary mechanism by which DCYF receives referrals of child abuse or neglect. Second, if during the course of a hearing the court learns of information that raises concern about a child's safety, the court may send a copy of its order to DCYF. If DCYF had previously been involved in that case, the court may request an assessment of results from an investigation that was already in progress. However, if the court's referral by order is DCYF's first notice of suspected abuse or neglect, DCYF will call central intake itself to create an assessment and conduct its own investigation.

[2] At the court's invitation, John Greabe and Risa Evans of the Warren B. Rudman Center for Justice, Leadership & Public Service briefed, and Mr. Greabe argued, this case. Their service has been of invaluable assistance to the court.

of Mallett & Mallett, 163 N.H. 202, 208 (2012) (question of family division's jurisdiction "requires us to engage in statutory interpretation"). "When interpreting a statute, our first step is to examine the language of the statute, and, if possible, construe that language according to its plain and ordinary meaning." Petition of N.H. Div. for Children, Youth and Families, 173 N.H. ___, ___ (decided Sept. 30, 2020) (slip op. at 3) (citation omitted). "We do not consider words or phrases in isolation, but within the context of the statute as a whole." Id. "If a statute is unambiguous, then the first step of our analysis is also the last, and we need not consider legislative history to aid our analysis." Id.

RSA chapter 463 confers exclusive jurisdiction over minor-guardianship cases on the circuit court. See RSA 463:4 (2018); RSA 463:18 (2018); see also 490-F:3 (Supp. 2019) (establishing the circuit court). Because guardianships are statutory, "the court has only such power in that field as is granted by statute." In the Matter of Muller & Muller, 164 N.H. 512, 519 (2013). DCYF is subject to the circuit court's personal jurisdiction when the agency accepts an appointment as guardian of a minor. See RSA 463:10 (2018); RSA 463:18. In the absence of express legislative authority, the circuit court has no authority to join DCYF and order that the agency provide services in a purely private matter. See Muller, 164 N.H. at 519 (discussing circuit court's lack of jurisdiction over third party claims to marital property). Here, DCYF did not accept an appointment as guardian of the minor child, and there is no other statute that authorizes the circuit court to unilaterally join the agency as a party to a purely private dispute.

The circuit court relied primarily on RSA 170-G:4 to join DCYF as a party in a private guardianship case and order that the agency provide services to the private litigants. RSA 170-G:4 provides that DHHS has the power and duty to "[p]rovide, through social workers, services for all children and youth referred to it by the [circuit court] pursuant to RSA . . . 463 and for all children and youth who are at risk of placement with [DHHS] in connection with child abuse or neglect." RSA 170-G:4, II (Supp. 2019). The plain language of RSA 170-G:4 clearly defines powers and responsibilities of DHHS, and RSA chapter 463 clearly grants the circuit court subject matter jurisdiction over guardianship cases. However, neither statute contains language that can be construed as granting the circuit court the power to join DCYF as a party to a private guardianship case and order that DCYF provide particular services in that case.

At most, RSA 170-G:4 recognizes that the circuit court may make referrals to DCYF about suspected cases of child abuse or neglect. Nonetheless, having the ability to make a referral differs from having the authority to order that an agency adopt a particular course of action.

4

The Rudman Center as amicus curiae urges this court to construe this implied referral power broadly as allowing the circuit court to mandate directives to DCYF. This reading, however, is not supported by the ordinary meaning of the word "referral." A referral involves sending for "aid, information, [or] decision." Webster's Third New International Dictionary 1907-08 (unabridged ed. 2002). The one making the referral often has a limited role in directing the conduct of the person or agency receiving the referral. See, e.g., id. (patient referred to specialist; bill referred to committee); see also Black's Law Dictionary 1394 (9th ed. 2009) ("referral of client to employment-law-specialist" and "referral of the question to the board of directors"). Therefore, the provision in RSA 170-G:4 giving the circuit court discretion to make referrals to DHHS cannot be construed as authorizing the court to issue orders directing the manner in which DHHS handles the referrals.[3]

Finally, the circuit court's characterization of its original order as a mere "referral" does not justify the court's actions. "The interpretation of a trial court order is a question of law, which we review de novo." Choquette v. Roy 167 N.H. 507, 513 (2015) (citation omitted). Here, the original order was clear. The circuit court ordered that DCYF be joined to the case and it further ordered that DCYF provide services such as a parent aide and other supports for the benefit of the father. This mandate goes well beyond sending the case for "aid, information, or [a] decision" from DCYF. Webster's Third New International Dictionary 1907-08 (unabridged ed. 2002). Accordingly, the trial court exceeded its statutory authority to refer cases to DCYF by joining the agency as a party to the litigation and requiring that DCYF take a particular course of action.

III

For these reasons, we conclude that the circuit court lacked the authority to join DCYF as a party and to order the agency to provide services to the private litigants. Because we have resolved this case by interpreting RSA 170-G:4, it is not necessary to address DCYF's constitutional arguments. See State v. Addison, 165 N.H. 381, 418 (2013). DCYF's petition for a writ of prohibition is granted.

Petition granted.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[3] This is not to say, however, that the circuit court has no ability to provide guidance to DCYF with respect to the investigatory steps the agency should take and services the agency should provide. We simply make clear that the circuit court lacks the authority under its referral power pursuant to RSA 170-G:4 to mandate a particular course of conduct on the part of DCYF.

5