NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Hooksett Family Division
Nos.   2021-0032
       2021-0036


IN THE MATTER OF MATTHEW ROUTHIER AND KELLY ROUTHIER

Submitted: January 13, 2022
Opinion Issued: February 15, 2022


Matthew Routhier, self-represented party, by brief.


Marshall Law Office PLLC, of East Kingston (Keri J. Marshall on the brief), for the respondent.


Cullen Collimore PLLC, of Nashua (Kevin G. Collimore), for intervenor Elliot Health Systems, filed no brief.


DONOVAN, J.  The respondent, Kelly Routhier (wife), appeals a final decree of the Circuit Court (Sadler, J.) in her divorce from the petitioner, Matthew Routhier (husband).  The wife argues that the circuit court erred by: (1) concluding that it lacked jurisdiction to divide the husband's interest in real property that he owned jointly with his parents; (2) deviating from the child support guidelines without providing adequate justification; (3) denying her request for alimony without providing adequate justification; and (4) declining to rule on her proposed findings of fact and rulings of law.  The husband cross-

appeals the final divorce decree as well as the circuit court's final parenting plan.  He argues that the circuit court erred by: (1) ordering the parties' child to attend public school in the district serving the wife's residence; (2) improperly distributing the parties' firearms; (3) preventing one of his witnesses from testifying at the final hearing; and (4) barring the court-appointed guardian ad litem from attending part of the final hearing.  We affirm in part, vacate in part, and remand.

## I. Facts

The following facts are supported by the record or are otherwise undisputed.  Additional facts are drawn from the record as necessary to address specific issues raised by the parties.  The parties met in 2003.  In 2011, they engaged to marry.  Shortly thereafter, the husband and his parents acquired a piece of property in Dunbarton (Dunbarton property).  The husband intended to build a house on the property for himself and the wife, as well as an in-law apartment for his parents.  The husband's parents financed the purchase by securing a home equity line of credit (HELOC) on their house in Manchester.  Neither the husband nor the wife contributed any money toward the purchase.  The deed to the property listed the husband and both of his parents — but not the wife — as joint tenants with rights of survivorship.

In 2013, the parties married.  In 2015, their only child was born.  In or about May 2018, the parties separated.  Following the separation, the wife and the child moved into the wife's parents' house in Hampstead, and the husband moved into his parents' house in Manchester.  As of the final hearing, neither party had relocated.

In July 2018, the parties filed for divorce.  In September 2018, the husband filed an ex parte motion requesting joint decision-making authority and increased parenting time with the child, among other things.  Following a hearing, the court awarded joint decision-making authority and ordered the child to reside primarily with the wife.  The court further determined that the husband was entitled to spend one weeknight and every other weekend with the child.  In January 2019, following a hearing, the court issued a temporary order establishing the same parenting schedule with "a slight modification," denying the wife's request for temporary alimony, and ordering the husband to pay $421 biweekly in child support.

Between June 2019 and September 2020, the court held a final hearing, which consisted of five days of testimony.  During that time, the husband filed three emergency motions requesting expedited hearings to address the parenting schedule, the parties' parenting responsibilities, and the child's schooling.  The husband alleged, among other things, that the wife violated the temporary order by attempting to enroll the child in school without consulting him and by attempting to interfere with his parenting time.  He requested,

2

among other things, increased residential parenting time and permission to enroll the child in school in Manchester.  The court denied all three motions, reserving the issues raised in the motions for the final hearing.

At the final hearing, a court-appointed guardian ad litem (GAL) testified about the parties' struggles with co-parenting and their inability to agree upon where the child should attend school.  The wife preferred the public school serving her residence in Hampstead, while the husband preferred a private Montessori school in Manchester.  The GAL testified that, although she had no concerns about the Hampstead school system, she recommended against the child attending school there, in part because the wife's family had multiple connections to the Hampstead school system.  The GAL explained that she believed the wife and her family were unsupportive of the husband's relationship with the child, and, for that reason, she was concerned that the wife's family's connections to the Hampstead school system would undermine the husband's role as a parent.  The GAL also recommended splitting parenting time equally between the parties.

The court also heard testimony about the parties' financial circumstances.  At the time of the hearing, the husband was employed full time as a landscape architect, earning approximately $5,440 per month.  The wife was working approximately twenty-five to thirty hours per week as a pharmacy technician, earning about $2,700 to $2,900 per month.  The wife testified that, due to financial constraints caused by the COVID-19 pandemic, her employer had no full-time positions available, and that she would likely earn less money if she found employment elsewhere.  Based upon the parties' income disparity, the wife requested both child support and alimony.

In November 2020, the court issued the final divorce decree and parenting schedule.  The court awarded the parties joint decision-making authority and approximately equal parenting time, and ordered the child to attend the public school serving the wife's residence in Hampstead.  The court also ordered the husband to pay $200 biweekly in child support — a downward deviation from the $412 figure set forth by the child support guidelines.  In addition, the court denied the wife's alimony request.

In dividing the parties' property, the court excluded the Dunbarton property from the marital estate.  Citing the husband's parents' ownership interest, the court concluded that "the Family Division does not have jurisdiction to determine ownership interest in property if there is a third party claim."  As relevant here, the court also divided two of the parties' firearms, awarding the lower-priced firearm to the wife and the more expensive firearm to the husband, and ordering the husband to pay the wife for the difference in value between the two firearms.  Both parties filed motions for reconsideration.  Aside from correcting minor errors in the final decree and parenting schedule, the court denied the motions.  These appeals followed.

The wife argues that the court erred as a matter of law by concluding that it lacked jurisdiction to divide the husband's interest in the Dunbarton property. Whether the circuit court has subject matter jurisdiction is a matter of statutory interpretation. Rogers v. Rogers, 171 N.H. 738, 742-43 (2019). Statutory interpretation presents a question of law, which we review de novo. Id. at 743. When interpreting a statute, we are the final arbiter of the legislature's intent as expressed by the words of the statute considered as a whole. Id. We first look to the statutory language, and whenever possible construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. When the statute's language is unambiguous, we do not look beyond it for further indications of legislative intent. Id.

The circuit court has exclusive jurisdiction over divorce proceedings. See RSA 490-D:2, I (2014) (providing the former family division exclusive jurisdiction over matters involving "[p]etitions for divorce"); RSA 490-F:3 (Supp. 2021) (granting the circuit court jurisdiction that was previously conferred upon the family division). In divorce proceedings, the circuit court is responsible for equitably dividing the parties' marital property. See RSA 458:16-a (Supp. 2021). When doing so, the court employs a two-step analysis. In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007). First, the court determines, as a matter of law, which assets constitute marital property under RSA 458:16-a, I. Id. Then, the court exercises its discretion to equitably distribute those assets pursuant to RSA 458:16-a, II. Id. The circuit court's determination as to whether certain assets constitute marital property presents a question of law, which we review de novo. Id.

Pursuant to RSA 458:16-a, I, marital property includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I. The statute makes no distinction between property brought to the marriage by the parties and that acquired during marriage, nor does it exclude property given to one spouse during the course of the marriage. In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006). Regardless of the source, all property owned by each spouse at the time of divorce is marital property. Id.; see RSA 458:16-a, I. While the court has discretion to consider when and by whom property was acquired in distributing that property, the relevant statutory scheme does not classify property based upon when or by whom it was acquired, but rather assumes that all property is susceptible to division. Sarvela, 154 N.H. at 431; see RSA 458:16-a, I-II.

Here, there is no dispute that, at the time of the divorce, the husband and his parents held title to the Dunbarton property as joint tenants with

rights of survivorship. The husband concedes that, pursuant to the joint tenancy, he owned "an undivided interest in the property and the full right to occupy and use all of it." Because the husband held this interest at the time of the divorce, it was marital property. See RSA 458:16-a, I. Contrary to the husband's argument, it makes no difference that the property was purchased before the marriage; that neither the husband nor the wife lived on the property or contributed any money toward the purchase; that the husband intended to reimburse his parents for their investment in the property; or that the husband lacked "unilateral control" over improving the property. See Sarvela, 154 N.H. at 431.

The husband nonetheless argues that the circuit court properly concluded that it lacked jurisdiction to distribute his interest in the Dunbarton property. Citing the husband's parents' concurrent ownership of the property, the court determined that RSA 458:16-a "only allows the court to include property in the [marital] estate that is owned by one or both parties," not property "with third party ownership." Thus, the court concluded that the property "is beyond the jurisdiction of this court" and that "granting [the wife] a portion of the property is not authorized in this type of case."

In reaching its decision, the court relied, in part, upon In the Matter of Muller & Muller, 164 N.H. 512 (2013). In Muller, the husband executed a promissory note and second mortgage to his parents guaranteeing the repayment of money that the parents gave to the husband and his wife for the purchase of their house. Id. at 514-15. Finding that the promissory note and second mortgage were invalid, the trial court ordered the parties to sell the property and divide the proceeds equally without satisfying the second mortgage. Id. at 515. We vacated the property division portion of the divorce decree, holding that "when dividing [marital] property pursuant to RSA 458:16-a, the family division does not have the jurisdiction to disregard or invalidate a third party's claim of interest in marital property." Id. at 519-20. We reasoned that RSA 458:16-a, I, "allows the family division to distribute only property that belongs to the divorcing parties," while RSA 458:16-a, II "allows the family division to distribute marital property only to the divorcing parties themselves." Id. at 518. Thus, we concluded that the court lacked jurisdiction to invalidate the husband's parents' interest in the property. Id. at 518-20.

Muller is distinguishable from this case. Unlike the property at issue in Muller, which was encumbered by the husband's promissory note and second mortgage to his parents, the Dunbarton property is unencumbered. Cf. id. at 514-15. The husband's parents financed the purchase of the Dunbarton property by securing a HELOC on their own home in Manchester, which they used to purchase the Dunbarton property. The husband's parents later secured additional HELOCs on their Manchester home and used part of the funds to finance improvements to the Dunbarton property. To the extent that the husband promised to repay his parents for financing the purchase and

5

improvements, there is no evidence that such promise was secured by the Dunbarton property. Nor does the husband claim that such a security interest exists. Thus, unlike the parents in Muller, the husband's parents' ownership interest in the Dunbarton property is limited to their undivided interest as joint tenants with rights of survivorship. Cf. id.

Moreover, contrary to the husband's argument, including the value of his undivided interest in the Dunbarton property as part of the marital estate does not sever his joint interest from the whole and would not invalidate his parents' ownership interest. Cf. id. at 519; 20 Am. Jur. 2d Cotenancy and Joint Ownership § 23, at 152 (2005) ("[I]f there are three or more joint tenants, a conveyance by one to a stranger severs the joint tenancy only as to the share conveyed, which is then held by the grantee as a tenancy in common, while the other joint tenants continue to hold their interests in joint tenancy."). Nor would allocating the value of the husband's interest affect the parents' outstanding HELOC debt, which is not secured by the Dunbarton property, but, rather, by the parents' Manchester residence. Cf. Muller, 164 N.H. at 518-19.

Therefore, because the husband's ownership interest in the Dunbarton property was marital property under RSA 458:16-a, I, we conclude that the circuit court had jurisdiction to distribute the husband's interest pursuant to RSA 458:16-a, II. See RSA 490-D:2, I; RSA 490-F:3. By concluding otherwise, the court erred as a matter of law. Accordingly, we vacate the property division portion of the circuit court's order and remand for a new property division consistent with this opinion.

The wife next argues that the circuit court erred by deviating from the child support guidelines without providing adequate justification for doing so. We agree. We will not disturb the circuit court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. In the Matter of Silva & Silva, 171 N.H. 1, 4 (2018). Accordingly, we must determine whether the record establishes an objective basis sufficient to sustain the court's discretionary judgment. Id.

New Hampshire's child support guidelines, codified in RSA chapter 458-C (2018 & Supp. 2021), establish a uniform system for determining child support awards. Id. There is a rebuttable presumption that an award calculated under the child support guidelines is the correct amount of child support. RSA 458-C:4, II. This presumption may be overcome, and the circuit court may deviate from the guidelines, when it finds by a preponderance of the evidence that application of the guidelines would be "unjust or inappropriate," RSA 458-C:4, II, based upon "[s]pecial circumstances" set forth in RSA 458-C:5, I. See RSA 458-C:4, II; RSA 458-C:5, I-II. If the circuit court deviates from the guidelines, it must "make a written finding as to why a special circumstance pursuant to RSA 458-C:5 justifies an adjustment from the child

support guidelines to avoid an unjust or inappropriate result." Silva, 171 N.H. at 4 (quotation omitted); see RSA 458-C:4, II; RSA 458-C:5, I.

Here, the child support guidelines worksheet attached to the divorce decree lists the husband's child support obligation as $412 biweekly. Nonetheless, the court ordered the husband to pay $200 biweekly. In reaching its decision, the court considered the parenting schedule. The court also noted "the disparity in income" between the parties and determined that the wife was not voluntarily underemployed "at this time due to the impact" of the COVID-19 pandemic. In addition, the court observed that both parties "live with their parents" and "are not currently supporting their own households but they will be in the near future."

We conclude that the circuit court's written findings were insufficient to justify its downward deviation from the child support guidelines. Although RSA 458-C:5 identifies the parenting schedule as a special circumstance, RSA 458-C:5, I(h), the circuit court correctly observed that "[t]he parenting schedule alone does not justify a deviation" from the guidelines. See RSA 458-C:5, I(h)(1) ("Equal or approximately equal parenting residential responsibilities in and of itself shall not eliminate the need for child support and shall not by itself constitute ground for an adjustment."). The court did not identify any other special circumstances under RSA 458-C:5, I, justifying the deviation. To the contrary, the court determined that awarding "some" child support to the wife was necessary to allow the child to enjoy "a similar or approximately equal style" to that she enjoys with the husband. (Quoting RSA 458-C:5, I(h)(2)(C)).

To the extent that the circuit court based its decision upon its finding that both parties live with their parents, it failed "to provide written findings relative to why [that] particular special circumstance justified an adjustment from the child support guidelines." In the Matter of Forcier & Mueller, 152 N.H. 463, 465 (2005) (holding that the court's "simple statement that the 'remainder of child support obligation will continue to go to the college trust fund for the children' was not legally sufficient to explain what 'economic consequences' result from this payment and why it [was] consequently appropriate and just to decrease the . . . child support payment . . . below the guideline amount"). Accordingly, we vacate the court's child support award and remand for the court to make specific findings explaining whether application of the guidelines would be unjust or inappropriate, and, if so, explaining any adjustment that it makes from the guidelines. See In the Matter of Gordon and Gordon, 147 N.H. 693, 700 (2002).

The wife also argues that the circuit court erred by denying her request for alimony without adequately explaining its decision. The circuit court has broad discretion to award alimony. See In the Matter of Cohen & Richards, 172 N.H. 78, 92 (2019). We review the court's alimony determination for an unsustainable exercise of discretion, and we will uphold its factual findings

7

unless they are unsupported by the evidence. See id. Alimony determinations are based primarily upon the parties' income and need. Id. at 83; see RSA 458:19-a (Supp. 2021). In a contested proceeding, an order denying alimony "shall include . . . [f]indings supporting the court's decision to . . . deny the requested alimony." RSA 458:19-a, VI(b)(1).

Here, the husband objected to the wife's request for alimony, arguing that the wife "could be more self-sustaining if she were to work a full time job." The court found that "even at her current hourly rate, if [the wife] were to increase her hours to full-time (40 hours) there would still be a disparity in income of almost $2000 per month between the parties." Nonetheless, the court denied the alimony request.

We again conclude that the circuit court's written findings are insufficient to support its decision. See RSA 458:19-a, VI(b)(1). The court did not explain how any of the factual findings in its order "support[] [its] decision to . . . deny the requested alimony." Id. While the court noted that the wife was not voluntarily underemployed and that the husband must provide health insurance to the wife for three years, it made no findings about the cost of the wife's health insurance, nor did it explain how providing health insurance would assist the wife in meeting her reasonable needs. See RSA 458:19-a, I. Accordingly, we vacate the alimony portion of the circuit court's order and remand for the court to reconsider its decision to deny alimony. See RSA 458:19-a, VI(b)(1).

Finally, the wife argues that the circuit court erred by declining to rule on her proposed findings of fact and rulings of law. She asserts that the court "committed unsustainable exercises of discretion in its Orders on child support and alimony" and that "[t]he Supreme Court cannot properly review those Orders without the specific findings and rulings on which the [circuit] court based its Orders." We need not decide whether the circuit court erred by declining to rule on the wife's proposed findings and rulings because the wife limits her argument on this issue to the court's orders on child support and alimony, and, as explained above, we vacate and remand the child support and alimony portions of the court's order on other grounds. However, we reiterate that, although the court "need not respond expressly to every specific request [for findings and rulings] filed by a party," it must "make findings of the basic or essential facts that are sufficient to support the ultimate decision." Magrauth v. Magrauth, 136 N.H. 757, 760 (1993) (quotation omitted). "This may be done in the narrative form, and the essential rulings of law may be likewise explained." Id. (quotation omitted).

### III. Petitioner's Cross-Appeal

The husband argues that the court erred by ordering the child to attend the public school serving the wife's residence in Hampstead, instead of his

preferred school in Manchester, despite evidence of the wife's "continued attempts to minimize [his] time with the child and . . . his role as a co-parent." (Bolding omitted.)  When, as here, two fit parents who share decision-making authority cannot agree about their child's schooling, the court applies the best interest standard to resolve the dispute.  See In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585-88 (2011).  RSA 461-A:6, I, codifies the best interest standard, listing factors the court must consider, including:

  (a) The relationship of the child with each parent and the ability of each parent to provide the child with nurture, love, affection, and guidance.

  (b) The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

  (c) The child's developmental needs and the ability of each parent to meet them, both in the present and in the future.

  (d) The quality of the child's adjustment to the child's school and community and the potential effect of any change.

  (e) The ability and disposition of each parent to foster a positive relationship and frequent and continuing physical, written, and telephonic contact with the other parent, including whether contact is likely to result in harm to the child or to a parent.

  (f) The support of each parent for the child's contact with the other parent as shown by allowing and promoting such contact, including whether contact is likely to result in harm to the child or to a parent.

  (g) The support of each parent for the child's relationship with the other parent, including whether contact is likely to result in harm to the child or to a parent.

  (h) The relationship of the child with any other person who may significantly affect the child.

  (i) The ability of the parents to communicate, cooperate with each other, and make joint decisions concerning the children, including whether contact is likely to result in harm to the child or to a parent.

      . . . .

9

(l) The policy of the state regarding the determination of parental rights and responsibilities described in RSA 461-A:2.

(m) Any other additional factors the court deems relevant.

RSA 461-A:6, I (2018); see RSA 461-A:2, I (2005) (stating that "the policy of this state" includes, among other things, "[s]upport[ing] frequent and continuing contact between each child and both parents" and "[e]ncourag[ing] parents to share in the rights and responsibilities of raising their children").

We review decisions regarding parental rights and responsibilities for an unsustainable exercise of discretion. Kurowski, 161 N.H. at 585. We consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the circuit court's determination if it could reasonably have been made. See id. The circuit court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses. See id.

We conclude that the circuit court did not unsustainably exercise its discretion by ordering the child to attend the public school serving the wife's residence in Hampstead. Notwithstanding the GAL's testimony about the child's schooling and the parties' struggles with co-parenting, the circuit court's findings of fact provide an objective basis sufficient to sustain its discretionary decision. In its written decision, the circuit court cited, among other things, the wife's intent "to remain in the Hampstead area as her town of residence." The circuit court also observed that the husband "lives with his parents and it is unclear how long that arrangement will last and where he will go if he decides to secure a residence on his own after the divorce." The court further found that the husband's preferred school in Manchester "only goes to a certain level" and that "it is unclear if [the child] would attend with friends as she would if she attends in Hampstead." Thus, the court determined that "the smaller class size, teacher to student ratio and the consistency of friends and education tilts in favor of Hampstead."

The husband further argues that ordering the child to attend school in Hampstead violated his constitutional rights under Part I, Article 2 of the State Constitution and the Fourteenth Amendment to the Federal Constitution. We disagree. We have observed that the best interest standard "does not and cannot abrogate a fit parent's constitutional right to direct the upbringing of his or her child." Id. at 590 (quotation omitted). However, in the context of divorce, the circuit court has authority to adjudicate disputes between two fit parents involving parental rights in accordance with the child's best interests. See id. Because the parties could not agree about the location of the child's schooling, the court properly utilized the best interest standard to resolve the dispute. See id.

10

The husband also argues that the circuit court's decision regarding the child's schooling is particularly problematic in light of its refusal to address his three emergency motions regarding the temporary parenting schedule, the parties' parenting responsibilities, and the child's schooling. He argues that the circuit court unsustainably exercised its discretion "by not addressing the motions as submitted." He further contends that, by leaving the temporary parenting schedule in place during the pendency of the proceedings, the circuit court violated "his rights as a parent for over two years" and, consequently, "allowed the [respondent] to violate the [temporary] order regarding joint decision making" when she attempted to enroll the child in school.

We conclude that these arguments are moot. In general, a matter is moot when it no longer presents a justiciable controversy because the issues involved have become academic or dead. In the Matter of O'Neil & O'Neil, 159 N.H. 615, 624 (2010). Here, the circuit court addressed all of the issues raised in the husband's emergency motions — including the parenting schedule, the child's schooling, and the parties' struggles with co-parenting — at the final hearing and in the final divorce decree and accompanying parenting schedule. Thus, even if the court erred by refusing to address the motions, the issue has become merely academic. See id. Similarly, to the extent that the husband challenges specific provisions in the temporary order, any such argument does not present a justiciable controversy, as the temporary order no longer governs the parties' parenting responsibilities. See id.

The husband next argues that the circuit court erred in dividing the parties' two firearms. Specifically, he argues that the legislature did not intend the meaning of the word "property" in RSA 458:16-a, I, to include firearms, and that, even if it did, awarding the wife one of the firearms as part of the property division violated his right to bear arms under Part I, Article 2-a of the State Constitution as well as the Second and Fourteenth Amendments to the Federal Constitution. Because, as explained above, we conclude that the circuit court erred by declining to distribute the husband's undivided interest in the Dunbarton property, we vacate the property division portion of the circuit court's order and remand for further proceedings. Nonetheless, in the interest of judicial economy, and because the husband's statutory argument is likely to arise on remand, we briefly address that argument. See State v. Williams, 173 N.H. 540, 543 (2020).

RSA 458:16-a, I, defines the term "property" as "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." Nothing in the statute suggests that the legislature intended to categorically exclude certain types of tangible personal property — such as firearms — from this definition. See RSA 458:16-a. To hold otherwise would add language to the statute that the legislature did not see fit to include. See Rogers, 171 N.H. at 743. Because the plain meaning of the statute's language

11

is clear and unambiguous, we need not consider the other state and federal statutes cited in the husband's brief.  See id. ("When the language of a statute is unambiguous, we do not look beyond it for further indications of legislative intent.").  Accordingly, we conclude that the meaning of the word "property" in RSA 458:16-a, I, includes firearms.

The husband also argues that the circuit court violated his right to possess and bear arms under the State and Federal Constitutions when it awarded one of the parties' firearms to the wife.  We observe that, with respect to the parties' firearms, the circuit court's property division award addressed which firearm the husband was entitled to possess (and bear), not his right to possess (and bear) them.  Moreover, the husband's constitutional claims are insufficiently developed on appeal to warrant further review.  See Lennartz v. Oak Point Assocs., 167 N.H. 459, 464 (2015) ("[N]either passing reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration." (quotation omitted)).

Finally, the husband argues that the circuit court erred by "refusing to hear" one of his witnesses and by "not allowing" the GAL to attend part of the final hearing in September 2020.  (Bolding omitted.)  Because the husband raises both arguments for the first time on appeal, we conclude that they are unpreserved for appellate review.  Accordingly, we decline to address them. See LaMontagne Builders v. Brooks, 154 N.H. 252, 258 (2006).

> Affirmed in part; vacated in part; and remanded.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.